356

ALBERT WILLIAMS, Commissioner, etc., et al.

*v.*

THOMAS JEFFERSON INSURANCE COMPANY.

385 S.W.2d 908.

(*Nashville,* December Term, 1964.)

Opinion filed January 6, 1965.

MARNE S. MATHERNE, EDGAR P. CALHOUN, Assistant Attorneys General, Nashville, for Commissioner.

THOMAS WARDLAW STEELE, of GULLETT, STEELE & SANFORD, Nashville, for Thomas Jefferson Ins. Co.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The insurance company filed two original bills seeking to recover certain taxes paid under protest to the Commissioner of Insurance and Banking of the State of Tennessee. These cases were consolidated for trial and involved the same factual situation and legal principles although they covered various taxable periods.

In July, 1963, the Commissioner made deficiency assessments against the insurance company, and as a result thereof, after certain conferences and letters, the com-

pany paid this deficiency under protest, and these suits followed. The Chancellor found in favor of the insurance company and allowed a recovery plus interest. By a memorandum opinion he ruled that the two statutes in question, the Reciprocity Statute, TCA sec. 56-423, and the Investment Credit Statute, TCA sec. 56-414, must be construed so as to give both statutes effect. From this decision the Commissioner has appealed, able briefs have been filed, and arguments heard. After spending some days considering the matter, we are now in a position to dispose of it.

The major tax imposed upon an insurance company is set forth in TCA sec. 56-408, Code Supplement, and is a tax on gross premiums of two per cent except for domestic life insurance companies who are required to pay only one and three-fourths per cent on gross premium receipts.

Involved in this litigation is TCA sec. 56-414, which provides in essence for a reduction or credit upon its gross premiums tax for investments in Tennessee property and securities by an insurance company, domestic or foreign, the amount of such reduction or credit being up to the insurance company to make claim for as provided by the statute.

The other statute involved in this litigation is sec. 56-423, TCA Supplement, and is known as the Reciprocity of Treatment Statute. This statute, in substance, provides that when the sum total of all taxes, fees, etc., imposed by a foreign state upon a Tennessee Company doing business in such foreign state is greater than the sum total of all such taxes, fees, etc., imposed by the State of Tennessee upon a foreign insurance company doing the same amount of business in Tennessee, then the sum total

of the foreign state's taxes and fees shall be imposed upon such foreign insuror doing business in Tennessee.

This insurance company is chartered in the State of Kentucky and is qualified to do business in the State of Tennessee. A group of residents of Tennessee bought control of the company and, after making certain plans, they were advised of sec. 56-414, TCA, providing for a credit against the gross premium tax for investment in Tennessee securities. As a result of this, this company immediately began to invest in Tennessee securities which come under sec. 56-414, TCA, which sets out securities approved by this State, and provides if they invest in such securities they are given an incentive to do so, because they by reason of this section are allowed a credit against the gross premium tax which they would otherwise have to pay. This company made large investments in this State, and as a result they began in 1959 to make claims pursuant to the statute so that they might have credit against the gross premium tax that they would otherwise have to pay. This arrangement went on and the company continued to pay the tax until 1963, when the Commissioner upon advice of the Attorney General concluded that a foreign, or out of state insurance company, as this one was, which was subject to the retaliatory or reciprocity statute (Sec. 56-423, TCA Supplement) was not entitled to such credit as provided under sec. 56-414, TCA. It was then that the deficiency assessments, as said above, were made, eventually paid and this suit brought.

We are thus called upon to construe these two statutory provisions and determine what was the legislative intent with reference thereto. Both statutory provisions involved were enacted at the same time and in the same statute,

Chapter 49, Public Acts of 1953. The retaliatory section was slightly amended but that doesn't affect the question here involved, by Chapter 185 of the Public Acts of 1957.

The preamble to the 1953 Act shows very clearly that the Legislature determined and annunciated two definite and distinct policies, to-wit, (1) granted an incentive to insurance companies, both domestic and foreign, to invest in Tennessee securities, and (2) a reciprocity or retaliation statute against foreign insurance companies chartered in states which place heavy burdens by taxation on Tennessee companies doing business therein. We will not quote these Acts as they are readily accessible to anyone who desires to read them.

It seems to us in view of the preamble to the Act, and what is said in the Act, that both of these annunciated policies of the Legislature must be given effect if the legislative intent and will is to be followed. Both Acts and the policies in both were passed for the purpose of increasing the State revenue. This is shown by the preamble to both Acts.

The retaliatory or reciprocity section of the Act was intended to equalize the tax burden which each state imposed by virtue of its sovereign authority to tax. It seems to us that this section has no connection whatsoever with the incentive section, sec. 56-414, TCA. The taking of credit under the last section mentioned is entirely optional with the tax paying insurance company, both domestic and foreign. As to whether or not an insurance company gains benefit for credit allowed by this statute is entirely in control of this question—not the Commissioner of Insurance and Banking. The amount of tax payable by insurance companies, both domestic and foreign, in a given period, is not made to depend upon

the amount of tax levied by the State of Tennessee, which is fixed by statute, sec. 56-408, TCA, and is made uniform against all taxpayers falling under the levy, but is made to depend upon permissive action of the taxpayers in making investments in Tennessee securities. To this extent, the insurance company (taxpayer) in Tennessee controls not the amount of the tax levied upon it by the State, but the amount of tax payable by it to the State according to its voluntary investments in Tennessee securities.

The Commissioner mandatorily fixes the tax as required by sec. 56-423, TCA Supplement, and the insurance company is fully subject to all the tax levy that has been specified in the Act, sec. 56-408, TCA. After this tax has been levied, according to these statutes, sec. 56-414, TCA, the taxpayer is given an incentive to invest in Tennessee securities and such an incentive is credit against "its gross premiums tax", which credit is entirely optional with the taxpayer insurance company and is wholly under this taxpayer's control.

It seems to us when the General Assembly enacted sec. 56-414, TCA Supplement, that it had in mind that this incentive statute would induce these insurance companies to invest in securities in this State, and from these securities other taxes would accrue to the State and therefore more than make up for what is allowed by reason of their investing in Tennessee securities. We take judicial knowledge of the fact that all Tennessee officers from the Governor down are trying at all times to induce new capital to come into the State for two obvious reasons, one is to supply people of the State with employment and the other is to produce income by way of taxes to support the State government.

■ It is our duty in attempting to construe statutes of the kind as here to give effect to both, if we can, to harmonize the provisions which are apparently in conflict and thereby avoid a construction of one section which will be repugnant to the obvious intent of the Legislature in the other section, and likewise to avoid an absurd result, which will frustrate the obvious intention of the Legislature. *Tiger Creek Bus Line v. Tiger Creek Transp. Ass'n.,* 187 Tenn. 654, 216 S.W.2d 348; *Tennessee Electric Power Co. v. Chattanooga,* 172 Tenn. 505, 114 S.W.2d 441; *Hamilton Nat'l Bank v. McCanless,* 176 Tenn. 570, 144 S.W.2d 768; *First Nat'l Bank of Memphis v. McCanless,* 186 Tenn. 1, 207 S.W.2d 1007.

These two statutes which are part of the same Act can very well be harmonized so as not to reach any absurd result or to make them at all repugnant. We know that the Legislature, made up of men of common sense and intelligence, in enacting an Act of the kind intended for it to be considered in that light. They did not intend to do something which was worthless or just merely to put a bunch of words in an Act on the book, but the whole thing was to have some purpose. When we thus consider these two statutes they can be construed in harmony with each other, not because of any arbitrary requirement that they be so construed, but because the real legislative intent becomes apparent when the two statutes are examined separately and then construed as a whole.

As said above, the retaliatory or reciprocity provision, sec. 56-423, TCA Supplement, is a mandatory requirement that the same amount of tax be levied by the Commissioner upon a Kentucky Insurance Company doing business in Tennessee as Kentucky would levy upon a Tennessee Company doing business in Kentucky. This section

applies to the levy of tax and nothing else, and means simply that, for example, if Kentucky levies a four per cent gross premium tax upon a Tennessee company instead of a two per cent gross premium tax, then Tennessee will likewise levy a four per cent gross premium tax upon a Kentucky company rather than a two per cent tax, as is provided by statute. When this equalization of the levy has thus been performed all requirements of this section, sec. 56-423, TCA, have been met. After the Commissioner has performed his duty and met this section of the statute, it is then that the investment credit statute, sec. 56-414, TCA Supplement, comes into play and grants a credit against this tax as a whole, not just the retaliatory portion. This statute does not specify a lower tax rate; does not provide a tax exemption of any kind; it merely offers to the insurance companies a credit against their tax liability for their performance of an act found by the Legislature to be economically beneficial to Tennessee, to-wit, the investment of their assets in Tennessee securities. Thus it is when these two sections are carried out in this manner the intent of the Legislature is met. By the retaliatory statute the company is required to pay what other states require to be paid and thus brings in more revenue to this State, and by the incentive statute when the company invests in securities, as are set forth in the statute, this brings in more taxes, and thus it is that the economy of the State is improved by the two statutes. They are, in our judgment, in no way contradictory but when both statutes are carried out, as they should be and can be, under the plain language of the statute, then the purpose of the Legislature as set forth in the preamble to this Act is clearly fulfilled.

Both sides have made an exhaustive search and have been unable to find any case directly in point. The taxpayer (insurance company) says that the case of *Board of Insurance Commissioners v. Prudential Fire Ins. Co.* (Texas Civ.App., 1942), 167 S.W.2d 578, is directly in point. The State says that it is not in point. We have read this case twice in addition to what is said in the various briefs about it, and have reached the conclusion that both parties are right and both parties are wrong. The case certainly is well reasoned authority for the incentive statute. In other words, Texas had a similar 'kind of statute and by reason of applying that statute under the facts of that case the court reached the conclusion that it equaled the four per cent gross premium statute of Oklahoma, and said it wasn't necessary to apply the retaliatory section. We have Shepardized this case and find that two other Texas opinions have followed the case with the same principle that an incentive statute of the kind there was policy to bring in outside capital into the State of Texas. Of course, the State is right in its position that it doesn't take into consideration the retaliatory statute at all, and it just merely brushes it aside and says it isn't necessary to consider it, because by the investment of property in Texas, etc., it is brought up on a level or parity with the Oklahoma statute.

The State says that the case of *Kansas City Life Ins. Co. v. State,* 265 Wis. 414, 61 N.W.2d 816, is some authority for the insurance company in this case. The insurance company says it is not in point and hasn't anything to do with it. This case held that when a foreign state did not allow a deduction from the premium tax required of a local insurance company for the fee paid to the foreign state for official examination of the local corporation,

then the fee charged by the local state for examination of the foreign corporation's domicile in that local state may not be deducted in computing the premium tax due by the foreign corporation to the local state. This case is likewise no help to either side. We have made a rather extensive independent investigation and have been unable to find where any related proposition has been considered as here other than these cases.

■ We think the problem resolves itself into what was the intent of the Legislature. We feel that the conclusion above reached by the Chancellor is and was the intention of the Legislature, that is, that a foreign insurance company doing business in this State should pay the same amount of tax as would be levied upon a Tennessee company doing business in such foreign state. It can be readily carried out and when this is done the insurance companies are put on a parity with the states from which they come by the proper levy of tax which is made mandatory upon the Commissioner; then when that insurance company does come into Tennessee it is given an incentive to bring money into Tennessee by investment in Tennessee securities and when it does so it is entitled to this incentive tax credit. This in effect was what the Chancellor held below. After thinking about the matter for a long time and giving it considerable investigation we are forced to the conclusion that the Chancellor was correct and must be affirmed.

DYER and HOLMES, JUSTICES, concur.

CLEMENT, SPECIAL JUSTICE, and WHITE, JUSTICE, not participating.