REPUBLIC INSURANCE COMPANY, A Texas Corporation, and Vanguard Insurance Company, A Texas Corporation, Plaintiffs-Appellants,

v.

Honorable Millard H. OAKLEY, Commissioner of Insurance of the State of Tennessee, Defendant-Appellee.

Supreme Court of Tennessee.

May 17, 1982.

Wilson Sims, William W. Berry, Jr., Nashville, for plaintiffs-appellants.

Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

The plaintiff insurance companies brought this action to recover retaliatory insurance taxes, penalties and interest which they paid under protest; the Chancellor denied relief and the plaintiffs have appealed.

Each of the plaintiff companies is a Texas corporation that has been duly qualified to engage in the insurance business in Tennessee and has done so for a number of years; each of the companies writes primarily fire and casualty insurance and workers' compensation insurance in Tennessee.

During the taxable years in question, 1974 through 1977, the state of Tennessee, pursuant to T.C.A., § 56–408 (now T.C.A., § 56–4–205), levied upon the plaintiffs a tax at the rate of 2% of the gross premium receipts received from policy holders residing in this state or upon property located in this state; this tax was the same, of course, upon all such companies, whether or not they were Tennessee corporations or corporations domiciled in other states. During these same taxable years Texas imposed upon companies selling the same kind of insurance in Texas a similar tax in an amount equal to 3.85% of gross premium receipts. During the taxable period both Tennessee and Texas reduced the tax liability thus imposed if the taxpayer insurance company invested a certain portion of its assets in securities and other property of the taxing state. In Tennessee, this reduction for investment in Tennessee securities and other properties was in the form of "a reduction of or credit upon its gross premiums tax," as provided in T.C.A., § 56–414 (now T.C.A., § 56–4–210). For a taxpayer insurance company that had invested in Tennessee securities to the same extent each of the plaintiffs had invested during the taxable period in question, the amount of the credit due was as follows:

"[I]f ... such insurance company had invested in such Tennessee securities on such date an amount which was in excess of ninety percent (90%) of the amount it had invested in similar securities in such other state in which it then had the highest percentage of its admitted assets invested, such company's tax on its gross premiums shall be reduced by an amount equal to seventy-five percent (75%) of such tax. The foregoing shall only be applicable to a company having investments, as shown by the report, in Tennessee securities equal to at least twenty-five percent (25%) of its total admitted assets (extended at annual statement value)."

The comparable Texas statute, Article 7064 of the Texas Revised Statutes, for the same taxable period provided:

"If the report shows such insurance organization had invested in such Texas securities on such date an amount which is in excess of ninety percent (90%) of the amount that it had invested in similar securities in the state in which it then had the highest percentage of its admitted assets invested, its tax shall be 1.1% of such gross premium receipts."

The "retaliatory" tax provision under which the defendant Commissioner of Insurance imposed the disputed taxes upon the plaintiff companies is T.C.A., § 56–423 [1] (now § 56–4–218), which, in pertinent part, provided:

"When by the laws of any other state ... any premium or income or other taxes, ... prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in such other state ... which are in excess of such taxes ... prohibitions or restrictions imposed upon such insurance companies of such other state ... doing business in Tennessee ..., so long as such laws continue in force the same premium or income or other taxes ... prohibitions and restrictions of whatever kind shall be imposed upon such companies of such other state ... doing business in Tennessee.... Any tax, license or other obligation imposed by any city, county or other political subdivision of a state ... on such Tennessee insurance companies shall be deemed to be imposed by such state ... within the meaning of this section, and the commissioner of insurance for the purpose of this section shall compute the burden of any such tax, license or other obligation on an aggregate statewide ... basis as an addition to the rate of tax and

---

**1.** This statute has been revised subsequent to the tax period in question.

to the charges that are or would be payable by similar Tennessee insurance companies in such state . . . ."[2]

During the period from 1974 through 1977 the plaintiffs paid Tennessee taxes at the rate of 2% on their gross premium receipts from Tennessee business; but, the defendant commissioner, concluding that Texas imposed a higher gross premium receipts tax upon Tennessee companies doing business in Texas, *i.e.*, 3.85%, than Tennessee imposed upon the plaintiff Texas companies, *i.e.*, 2%, proceeded, under the above quoted retaliatory tax provisions, to assess retaliatory taxes equal to 1.85% (3.85%—2.00%) against each of the plaintiffs for the years in question. The plaintiffs paid these additional assessments under protest and brought suit against the commissioner to recover the same; the Chancellor found the issues in favor of the commissioner and decreed accordingly.

The argument of the plaintiffs is that a Tennessee company, operating in Texas with the same in-state premium income as the plaintiff companies and investing in Texas securities to the same extent as the plaintiffs have invested in Tennessee securities, would be taxed at a rate of only 1.1% of its gross premium receipts, whereas, each of the plaintiffs is being taxed in Tennessee at the rate of 2% on their gross premium receipts; therefore, they conclude that the Texas tax burden is less than the Tennessee tax burden and, thus, there is no basis for the Commissioner to assess retaliatory taxes. The defendant Commissioner refutes the plaintiffs' argument, contending that, in determining whether or not Texas imposes a greater tax liability than does Tennessee, the favorable treatment afforded by both Texas and Tennessee to companies which invest a certain percentage of their assets in securities and other property of the taxing state must be ignored as being immaterial and that the only basis for comparison is the basic tax rate of each state, that is, 3.85% in Texas and 2% in Tennessee. The Commissioner concludes that since the

Texas rate exceeds the Tennessee rate by 1.85%, his duty under the retaliatory taxing statute is to assess additional taxes at the rate of that differential of 1.85%. Our conclusion is that the Commissioner is correct; we affirm the decree of the Chancellor.

■ The plaintiffs, in a manner of speaking, are asking us to compare apples and oranges; thus, they urge that we compare the Texas tax rate, *after* it has been reduced from 3.85% to 1.1% as a credit for the taxpayer's investment in Texas securities, to the Tennessee tax rate of 2%, *before* its 75% reduction from 2% to .5% for investment in Tennessee securities.[3] Obviously, such a "comparison" is not authorized or justified under the law and the facts of this case.

■ If credits allowed for investment in the taxing state's securities were to be recognized in determining whether retaliatory taxes should be assessed, the plaintiffs would still lose their argument because the 1.1% Texas rate would exceed the .5% Tennessee rate. However, we agree with the Commissioner that credits allowable to insurance company taxpayers are not properly to be considered and that a determination whether or not retaliatory taxes are called for is to be based solely upon a comparison of the basic tax rate of the two states in question. In *Williams v. Thomas Jefferson Ins. Co.*, 215 Tenn. 356, 385 S.W.2d 908 (1965), this Court considered the Tennessee statutes here involved, T.C.A., §§ 56–408, 56–414, 56–423, and their relation with each other. Apparently the issue in that case was whether or not an out-of-state insurance company, authorized to do business in Tennessee, would be entitled to the credit authorized by T.C.A., § 56–414, for investment in Tennessee securities. We quote pertinent excerpts from the opinion in the *Williams* case:

"The retaliatory or reciprocity section of the Act (T.C.A., § 56–423) was intended to equalize the tax burden which each state imposed by virtue of its sovereign

---

2. The comparable Texas statute is Article 21.46 of the Texas Insurance Code.

3. *See*, T.C.A., § 56–414 (now T.C.A., § 56–4–210) cited above.

authority to tax. It seems to us that this section has no connection whatsoever with the [investment in local securities] incentive section, § 56–414, TCA. The taking of credit under the last section mentioned is entirely optional with the tax paying insurance company, both domestic and foreign . . . .

\* \* \* \* \* \*

"As said above, the retaliatory or reciprocity provision, § 56–423, TCA Supplement, is a mandatory requirement that the same amount of tax be levied by the Commissioner upon a Kentucky Insurance Company doing business in Tennessee as Kentucky would levy upon a Tennessee Company doing business in Kentucky. This section applied to the levy of tax and nothing else, and means simply that, for example, if Kentucky levies a four per cent gross premium tax upon a Tennessee company instead of a two per cent gross premium tax, then Tennessee will likewise levy a four per cent gross premium tax upon a Kentucky company rather than a two per cent tax, as is provided by statute. When this equalization of the levy has thus been performed all requirements of this section, § 56–423, TCA, have been met. After the Commissioner has performed his duty and met this section of the statute, § 56–414, TCA Supplement, comes into play and grants a credit against this tax as a whole, not just the retaliatory portion. This statute does not specify a lower tax rate; does not provide a tax exemption of any kind; it merely offers to the insurance companies a credit against their tax liability for their performance of an act found by the Legislature to be economically beneficial to Tennessee, to-wit, the investment of their assets in Tennessee securities.

\* \* \* \* \* \*

"We feel that the conclusion above reached by the Chancellor is and was the intention of the Legislature, that is, that a foreign insurance company doing business in this State should pay the same amount of tax as would be levied upon a Tennessee company doing business in such foreign state. It can be readily carried out and when this is done the insurance companies are put on a parity with the states from which they come by the proper levy of tax which is made mandatory upon the Commissioner; then when that insurance company does come into Tennessee it is given an incentive to bring money into Tennessee by investment in Tennessee securities and when it does so it is entitled to this incentive tax credit." 385 S.W.2d at 910–12.

■ Of course, the overriding concern in construing a statute is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute. *Crown Enterprises, Inc. v. Woods*, Tenn., 557 S.W.2d 491 (1977). The legislative purpose of the retaliatory insurance tax statute, as noted above, is to protect Tennessee insurance companies by encouraging foreign jurisdictions not to impose heavier burdens on Tennessee companies than Tennessee imposes upon their companies who come here to do business. Inequality of tax burdens between Tennessee and other states, such as Texas, represents the mischief which T.C.A., § 56–423, was designed to eliminate. It is our duty to enforce that enactment to remedy the mischief which it was designed to prevent. *Hilliard v. Park*, 212 Tenn. 588, 370 S.W.2d 829 (1963).

■ Our conclusion that the Texas tax burden is greater than the comparable Tennessee tax burden is supported by decisions from other jurisdictions. *See, Republic Ins. Co. v. Commissioner of Taxation*, 272 Minn. 325, 138 N.W.2d 776 (1965); *Atlantic Ins. Co. v. State Bd. of Equalization*, 62 Cal. Rptr. 784, 255 Cal.2d 1 (1967). In *Republic Ins. Co. v. Commissioner of Taxation, supra*, the plaintiffs in the present case brought an action for a refund of retaliatory taxes assessed by the State of Minnesota. There, as here, the plaintiffs argued that their tax rate in Texas was 1.1% and, thus, lower than the Minnesota rate of 2%. In determining the rate of tax imposed by Texas, the Minnesota court referred to Texas law as enunciated in *Board of Insurance Commissioners v. Prudential Fire Ins. Co.*, Texas

Civ.App., 167 S.W.2d 578 (1943), and observed that it was there decided that investment in Texas securities was merely an alternative way of paying the full 3.85% rate of tax. Plaintiffs argued there, as they do here, that if a Minnesota company operating in Texas had sufficient investments in Texas securities it would be entitled to a rate of taxation reduced from the base rate of 3.85%. Although observing that the plaintiffs were in the same situation in Minnesota as a Minnesota company would be in Texas with respect to actual investment in local securities, the court proceeded further and rejected the plaintiffs' construction of the applicable law and concluded that Texas law inherently discriminates against insurance companies from Minnesota and other states operating in Texas. Said the court:

"Our statute requires a comparison on the basis of what, on the one hand, Minnesota companies are required by a foreign state to pay and what, on the other hand, Minnesota requires foreign companies doing business in Minnesota to pay and imposes retaliation if the foreign tax be higher.

\* \* \* \* \* \*

"[I]t is not an answer to say that the Texas law is nondiscriminatory because an out-of-state company may adjust its investment portfolio so as to avail itself of equal treatment under the Texas law. This observation ignores the realities of the insurance business. It should require no statistics to demonstrate that the Texas statute operates to the advantage of domiciliary insurance companies. When a company organizes and begins business, its home state obviously becomes its major market. Its volume, surplus, and physical plant are developed in the local market and it can be expected that it will invest largely in local securities and property. Its investments become fixed in its own market until it becomes strong enough to expand elsewhere. That is why the Texas law with its requirement of investment, not merely in a certain type of assets but in Texas securities in

an amount which must bear a given relation to the amount of investment in the state of highest investment, necessarily constitutes a built-in preference in favor of a domestic company. By following the described investment policy in their home states foreign companies operating in Texas ultimately are subject to a tax rate for Texas business about three times that imposed on a domestic company." 138 N.W.2d at 780–82.

Thus, the court concluded that the Texas rate structure was discriminatory and held that the retaliatory tax was required because the Texas rate of 3.85% exceeded the Minnesota rate of 2%.

In *Atlantic Ins. Co., supra,* the California court reached the same conclusion as the Minnesota court. The plaintiffs in the California case were Texas insurance companies doing business in California and they argued there, as here, that, for purposes of determining whether the retaliatory taxes should be levied, a "similar" California company doing business in Texas should be considered to be one which had invested in Texas securities to the same extent as the plaintiffs had invested in California securities, thereby entitling it to the 1.1% Texas rate which would be less than the California rate of 2.35%. This argument was rebuffed by the California court which stated:

"The language of section 685 (the California retaliatory statute) does not suggest so extraordinary a construction of the term 'similar insurers.' Moreover, the decisions which have considered the method to be employed in making interstate comparisons do not support appellants' contention." 255 Cal.2d at 10.

The California court concluded that the comparison of tax burdens between Texas and California was to be based upon their base tax rates without regard to credits allowable for investment in local securities of the taxing state. *See also:* 44 C.J.S. *Insurance* § 76 (1945); 43 Am.Jur.2d *Insurance* §§ 86, 88 (1969).

■ The plaintiffs have raised a subsidiary issue whether or not the Commissioner was correct in assessing penalties against

the plaintiffs for the taxable year 1977 pursuant to T.C.A., § 56–4–216.[4]

Plaintiffs take the position that since their deficiency, if found, was due to the reciprocity statute, T.C.A., § 56–4–218, this penalty statute does not apply because it applies only to taxes imposed by T.C.A., § 56–4–205. We think that the reference in § 56–4–216 to § 56–4–205 refers primarily to the time for paying the tax. Moreover, the reciprocity statute refers to "premium taxes" throughout. Since § 56–4–205 *imposes* the "premium tax," it follows that an increase to the premium tax *rate* which comes about by operation of the reciprocity statute is still subject to penalty under § 56–4–216. We conclude that the Chancellor correctly allowed the penalty.

The decree of the trial court is affirmed; costs are taxed against the appellants and the cause is remanded to the trial court.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

4. T.C.A., § 56–4–216:

"*Failure to make returns and pay tax—Penalty—Revocation license.*—(a) Any foreign or domestic company failing and neglecting to make such returns and payments promptly and correctly, as provided by § 56–4–205, shall forfeit and pay to the state, in addition to the amount of these taxes, an amount equal to ten percent (10%) for the first month or fractional part thereof of delinquency, and penalty thereafter at the rate of one percent (1%) of the amount due for each month of such delinquency. All delinquencies shall bear interest at the rate of eight percent (8%) per annum from March 1 and September 1 of each year and no such penalty or interest may be waived.

"Provided, that the commissioner of insurance may in the exercising of his discretion, for good cause shown, upon application made in advance of delinquency date, grant an extension of time but not to exceed sixty (60) days, to the company to file the premium tax return and pay the tax herein imposed, without penalty attached, but the tax shall bear interest as herein provided from March 1 and September 1 until paid.

"(b) Any company failing to pay the tax due plus penalty and interest for sixty (60) days beyond the due date shall thereafter be debarred from transacting any business of insurance in the state until these taxes and penalties are fully paid, and the commissioner of insurance shall revoke the certificate of authority granted to the agent or agents for that company to transact business in the state."