# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 23, 2014 Session

## NORTHERN INSURANCE COMPANY OF NY, ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. X20120604  Robert N. Hibbett, Commissioner, Tenn. Claims Commission**
**(Middle Division)**

---

### No. M2013-00874-COA-R3-CV - **Filed July 31, 2014**

---

Claimant insurance companies challenge the state's calculation of the retaliatory tax.  They filed claims for refunds in the claims commission.  The commission ruled for the state. Claimants appealed, alleging that New York law required the charges at issue to be passed on to the policy holder, so the charges should not be included in the retaliatory tax calculation.  We find that four of the charges should be included in the retaliatory tax calculation and two should not.  Claimants also raise several constitutional challenges, all of which we reject.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission
### Affirmed in Part, Reversed in Part

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Bradley A. Lampley, Lisa E. Schwartz, Peter D. Edgerton, Tracy D. Williams, Tricia Thor Olson, and William M. Sneed, Nashville, Tennessee, for the appellants, Northern Insurance Company of NY and Assurance Company of America.

Tracy D. Williams, William M. Sneed, Peter D. Edgerton, and Lisa E. Schwartz, pro hac vice, Chicago, Illinois, for the appellants, Northern Insurance Company of NY and Assurance Company of America.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor

General; and Jonathan N. Wike, Senior Counsel; for the appellee, State of Tennessee.

John Brister Burns and Warren Davidson Broemel, Nashville, Tennessee, as the Amicus Curiae.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The relevant facts of this case are undisputed. Northern Insurance Company of NY and Assurance Company of America[1] (collectively referred to as "Claimants") are New York-domiciled insurance companies that are authorized to provide insurance, including workers' compensation and motor vehicle coverage, in Tennessee. The State of Tennessee, through the Tennessee Department of Commerce and Insurance ("the Department"), imposes retaliatory taxes[2] on foreign insurance companies doing business in Tennessee. Tenn. Code Ann. § 56-4-218. This appeal concerns the Department's assessment of retaliatory taxes on the Claimants.

By letters dated September 10, 2010, the Department informed Claimants it was conducting an audit for tax year 2009. The letters stated that the issues in this audit are "mainly retaliatory in nature." The Department requested Claimants to recalculate their Tennessee retaliatory taxes to include certain New York workers' compensation surcharges, file amended premium tax returns, and remit payment of the additional retaliatory taxes. Claimants disputed the applicability of Tennessee's retaliatory tax statute to the New York workers' compensation surcharges, but eventually paid the disputed taxes under protest.

On June 4, 2012, Claimants filed a complaint with the Tennessee Claims Commission ("the Commission") seeking a refund of retaliatory taxes paid under protest. Pursuant to Tenn. R. Civ. P. 56, Claimants and the Department filed cross-motions for summary

---

[1] Five separate groups of New York-domiciled insurance companies filed claims with the Tennessee Claims Commission seeking a refund of retaliatory taxes paid under protest. The cases proceeded concurrently through the Claims Commission and were heard jointly. The five New York cases, which were jointly briefed and argued on appeal but not consolidated, are: *Chubb Indemnity Insurance Company, et al. v. State*, No. M2013-00894-COA-R3-CV; *American Home Assurance Company, et al. v. State*, No. M2013-00875-COA-R3-CV; *Northern Insurance Company of NY, et al. v. State*, No. M2013-00874-COA-R3-CV; *Zurich American Insurance Company, et al. v. State*, No. M2013-00872-COA-R3-CV; *Great American Insurance Company of New York v. State*, No. M2013-00896-COA-R3-CV.

[2] We will provide an overview of retaliatory insurance taxation in the Analysis section of the opinion, *infra*.

2

judgment.  A hearing was held on January 22, 2013.  On March 8, 2013, the Commission issued a final judgment granting the Department's motion for summary judgment. Claimants appeal.

STANDARD OF REVIEW

Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04.  Where the facts are undisputed, this court reviews the grant of summary judgment de novo with no presumption of correctness. *City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn.1997).

ANALYSIS

*The Retaliatory Tax*

"[T]he principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 668 (1981).

> Generally, such statutes provide that whenever the laws of a particular state impose greater burdens and limitations upon companies organized in the enacting state, and doing business in such other state, than are imposed by the laws of the enacting state upon foreign companies doing business in that state, then the same burdens and prohibitions imposed by the foreign state will be imposed by the enacting state upon such companies of the foreign state.

43 AM. JUR.2d *Insurance* § 54 (2014).

Tennessee has enacted a retaliatory tax law, Tenn. Code Ann. § 56-4-218(a), which states in pertinent part:

> When, by the laws of any other state or foreign country, any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in the other state or foreign country, or upon their agents in the other state or foreign country, that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of the other state or foreign country doing business in this state, or that might seek to do business in this state, or upon their agents in the state, so

3

long as the laws continue in force, the same premium or income or other taxes, or fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions and restrictions of whatever kind shall be imposed upon the companies of the other state or foreign country doing business in this state, or upon their agents in this state.

Consistent with *Western and Southern Life Insurance Company*, 451 U.S. at 668, the Tennessee Supreme Court has said that:

[t]he legislative purpose of the retaliatory insurance tax statute, as noted above, is to protect Tennessee insurance companies by encouraging foreign jurisdictions not to impose heavier burdens on Tennessee companies than Tennessee imposes upon their companies who come here to do business.

*Republic Ins. Co. v. Oakley*, 637 S.W.2d 448, 451 (Tenn. 1982).

Thus, the issue under the retaliatory tax statute is whether any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions are imposed upon Tennessee insurance companies doing business in New York that are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of New York doing business in Tennessee.

*New York Charges at Issue*

There are several New York charges at issue. The Commissioner maintains that each charge in each statute constitutes a fee, fine, penalty, license, deposit requirement or other obligation, prohibition or restriction imposed upon Tennessee insurance companies doing business in New York that, together, are in excess of the taxes, fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions imposed upon the insurance companies of New York doing business in Tennessee. The following New York charges are at issue:

1. New York Workers' Compensation Board Surcharge under N.Y. Workers' Comp. Law § 151(2)(a). The charge covers the administrative expenses of the Workers' Compensation Board. The statute provides that "[t]he chair shall assess upon and collect a proportion of such expenses as hereinafter provided from each insurance carrier, . . . ." N.Y. WORKERS' COMP. LAW § 151(2)(a).

2. Special Disability Fund Surcharge under N.Y. Workers' Comp. Law § 15(8)(h)(4).

4

This fund pays supplementary coverage to previously injured workers. The statute provides that "the chair of the board shall assess upon and collect from . . . all insurance carriers," their proportion of the compensation payments and other expenses. N.Y. WORKERS' COMP. LAW § 15(8)(h)(4).

3. Reopened Case Fund Charge under N.Y. Workers' Comp. Law § 25-a(3). This fund covers claims filed by injured workers after the expiration of their policies. The statute provides that "the chairman shall assess and collect from all insurance carriers, in the respective proportions established in the prior fiscal year . . . , an amount sufficient to restore the fund to the prescribed minimum." N.Y. WORKERS' COMP. LAW § 25-a(3).

4. Workers' Compensation Security Fund Charge under N.Y. Workers' Comp. Law §§ 107, 108. This fund pays claims of insolvent insurance companies. "For the privilege of carrying on the business of workers' compensation insurance in this state," each carrier pays one per cent of its net premiums, less dividends paid to policyholders, into the fund. N.Y. WORKERS' COMP. LAW § 108(2).

5. Fire Insurance Fee pursuant to N.Y. Ins. Law § 9108 and N.Y. State Fin. Law § 54-g. The fee is paid in to an account which helps local governments defray expenses of fire code activities. "Every insurance company authorized to do business in this state shall collect, . . . a fire insurance fee, separately identified and charged to each policyholder." N.Y. INS. LAW § 9108(a).

6. Charges for the Motor Vehicle Law Enforcement Account and the Motor Vehicle Theft and Insurance Fraud Prevention Fund under N.Y. Ins. Law § 9110, N.Y. Fin. Law § 89-d, and N.Y. State Fin. Law § 97-mm. The former account funds state police activities related to auto theft and the latter fund pays for grants. The money for both comes from a fee charged to each holder of a policy for motor vehicle liability insurance coverage collected by each insurance company authorized to do business in the state. N.Y. INS. LAW § 9110(a).

The New York Workers' Compensation Board Charge for Administrative Expenses, the Special Disability Fund Charge, and the Reopened Case Fund Charge

These three charges can be discussed together. Each has language, quoted above, that assesses charges against insurance carriers. Regarding these three charges, N.Y. Workers' Comp. Law § 151(2)(c) states that "[a]ll insurance carriers, including the state insurance fund, shall collect such assessments from their policyholders through a surcharge based on premium in accordance with rules set forth by the New York workers' compensation rating board. . . ." Claimants argue that these charges are not "imposed upon" insurance companies doing business in New York as required by Tenn. Code Ann. § 56-4-218(a). Rather,

Claimants argue that the charges are imposed upon the policyholders who ultimately pay the charge. Because Tenn. Code Ann. § 56-4-218(a) requires that the charges be imposed "by the laws of any other state," we must look to New York law to determine upon whom these charges are imposed.[3]

A recent Michigan case found *Selective Insurance Company v. New York Workers' Compensation Board*, 953 N.Y.S.2d 368 (N.Y. App. Div. 2012), instructive. *See Commerce & Indus. Ins. Co. v. Dept. of Treasury*, 836 N.W.2d 695 (Mich. Ct. App. 2013). In the course of describing the funding of the New York workers' compensation system, the New York court stated:

> Pursuant to the self-supporting mechanism for the workers' compensation system, the Workers' Compensation Board collects assessments from carriers in order to fund the Board's administrative and operational expenses (*see* Workers' Compensation Law § 151), the Special Disability Fund (*see* Workers' Compensation Law § 15[8][h] ) and the Special Fund for Reopened Cases (*see* Workers' Compensation Law § 25-a). The carriers recover, or offset, these assessments from their insured policyholders through a surcharge, which is included in the insured's premiums (*see* Workers' Compensation Law §§ 15[8][h]; 25–a [3]; 151[2][a] ). The assessments charged to the carriers are calculated by the Board based upon the statutory methodology contained in the Workers' Compensation Law and without regard to the amount of surcharges collected by the carriers from their policyholders. . . .

*Selective Ins. Co.*, 953 N.Y.S.2d at 369. The assessments did not necessarily match the surcharges. *Id*. The Michigan Court of Appeals concluded that, "*Selective Ins. Co*. confirms that, at least during the tax years at issue in our case, the assessments paid by insurers were separate from the surcharges paid by policyholders."[4] *Commerce & Indus. Ins. Co.*, 836 N.W.2d at 704. We agree with that conclusion. It follows, then, that the pertinent statutes

---

[3]New York courts use rules for interpreting statutes that are similar to those of Tennessee. Under New York case law, a court "should attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used." *Patrolmen's Benevolent Ass'n of the City of N.Y. v. City of N.Y.*, 359 N.E.2d 1338, 1340 (N.Y. 1976) (citations omitted); *compare Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010).

[4]In oral argument, Claimant's counsel maintained that the *Selective Insurance Company* case was never briefed or argued before the Michigan court and that its holdings were in a different context from retaliatory taxes. We, like the Michigan Court of Appeals, find the case instructive.

impose the assessments upon the insurance companies.[5]

Claimants argue that the assessments and surcharges create a "pass through" situation in which the policy holder bears the ultimate burden of the assessment on the company so that the assessments cannot be said to be "imposed upon" the insurance company. Claimants cite *First American Title Insurance Company v. Combs*, 258 S.W.3d 627 (Tex. 2008) in support of their pass through argument. Texas taxed insurance premiums. *Combs*, 258 S.W.3d at 628. The agent kept 85% of the premium; the insurance company kept 15% of the premium. *Id.* at 630. The insurance company acted as a conduit for the entire tax payment by collecting the agent's portion of the tax and remitting the entire tax to the state. *Id.* at 634. The *Combs* court held that, "[t]his administrative burden of acting as a conduit for the agents' tax payments does not rise to the level of a 'direct imposition' and therefore cannot be counted as a burden meriting inclusion in the retaliatory tax calculation." *Id.*

We find *Comb*s distinguishable from the case before us. Under the Texas statutes, 85% of the premium tax was placed on the agent, who was required to send his or her taxes to the insurance company for transmittal to the state. Here, New York never directly taxes the policyholders. There are two distinct charges, the assessment and the surcharge. New York law allows a surcharge to be paid by the policyholders to the insurer, which may or may not cover the insurer's entire assessment. The surcharge is a recognition that most expenses of a company are passed on to consumers and represents an attempt to regulate that transaction. It is not an administrative pass through of the tax. We find the other authorities cited by Claimants distinguishable as well.

We hold that these three charges should be included in the computation of the retaliatory tax as to the State of New York.

New York Workers' Compensation Security Fund Charge

The Workers' Compensation Security Fund is created by N.Y. Workers' Comp. Law § 107. This fund pays claims of insolvent insurance companies. "Such fund shall consist of all contributions received and paid into the fund by carriers, as herein defined, . . . ." N.Y. WORKERS' COMP. LAW § 107. New York Workers' Compensation Law § 108(2) also discusses the payment: "For the privilege of carrying on the business of workers' compensation insurance in this state, every carrier shall pay into the fund for deposit in the workers' compensation security fund payment account established pursuant to section eighty-

_____

[5]The 2009 and 2010 amendments to the New York workers' compensation laws do not alter our conclusion. These amendments do not address the so-called "shortfall carriers." Thus, a difference between the assessments and the surcharges collected from policyholders still exists.

nine-f of the state finance law, . . . ." The statute also requires that policy holders pay a surcharge based upon a recoupment rate adopted by the state "which shall enable each carrier to recoup over a reasonable length of time a sum reasonably calculated to recover the payments by the carrier under this section . . . ." N.Y. WORKERS' COMP. LAW § 108(4).

Claimants consider the Workers' Compensation Security Fund charge to be a pass through as well. For the reasons expressed above regarding the first three charges, we respectfully disagree. The Workers' Compensation Security Fund charge should be included in the computation of the retaliatory tax as to the State of New York.

The Fire Insurance Fee and the Charges for the Motor Vehicle Law Enforcement Account and the Motor Vehicle Theft and Insurance Fraud Prevention Fund

The Fire Insurance Fee is established as follows: "Every insurance company authorized to do business in this state shall collect, in addition to the applicable premium charge, a fire insurance fee, separately identified and charged to each policyholder." N.Y. INS. LAW § 9108(a). " New York Insurance Law § 9108(b) imposes the fee "at the rate of one and one-quarter per centum on the gross direct premium written on property or risks located in this state . . . ." Similarly, as to the Motor Vehicle Law Enforcement Account and the Motor Vehicle Theft and Insurance Fraud Prevention Fund, "Every insurance company authorized to do business in this state shall annually collect, in addition to the applicable premium charge, a motor vehicle law enforcement fee charged to each holder of a policy issued in the state or for delivery in the state for motor vehicle liability insurance coverage." N.Y. INS. LAW § 9110(a). The annual fee is ten dollars per insured motor vehicle. N.Y. INS. LAW § 9110(b). "Each fiscal year, the first four million seven hundred thousand dollars shall be paid to the motor vehicle theft and insurance fraud fund . . . ." N.Y. INS. LAW § 9110(e)(1).

The claims commissioner determined that "any obligation placed on an insurance company that is payable to the state falls under the definition found in the statute just cited [Tenn. Code Ann. § 56-4-218(a)] and would be part of the aggregate total of taxes imposed on the insurer." Thus, the commissioner interpreted the language "any premium or income or other taxes, or any fees, fines, penalties, licenses, deposit requirements or other obligations, prohibitions or restrictions . . . imposed upon Tennessee insurance companies doing business in the other state," in Tenn. Code Ann. § 56-4-218(a), as including the obligation on the part of the insurer to collect and forward to the state a fee placed on a policyholder. We do not interpret the term "obligation" this broadly. The statute addresses state actions that cost an insurance company money. As the Texas Court of Appeals observed in *Combs*, where the insurance company merely collected the tax from its agents, "[a]t most, the only compulsion or obligation required of the insurer with regard to 85% of

8

the premium tax [the portion owed by the agents] is to write a check drawn on money remitted by the agent—at the end of the day, the insurer's bank account is not negatively impacted." *Combs*, 258 S.W.3d at 634. The essentially ministerial act of forwarding the policyholder's fee to the state is not an activity that falls within the retaliatory tax statute.

The New York statutes upon which these fees are based are unlike the statutes discussed earlier in this opinion. There is no assessment against the insurers and separate surcharge to policyholders. Rather, there is a direct statement that the insurance companies shall collect the fees and that the fees are charged to each policy holder. Based on this significant difference in language and the natural and ordinary meaning of the words used, we conclude that New York has indeed set up a pass through as to these fees.

*Due Process*

Claimants maintain that the Department changed its position as to charges to be included in computation of retaliatory taxes without notice or a hearing. The Department disagrees.

Claimants argue that Tennessee's retaliatory tax statute has remained "largely unchanged for 60 years," and that "in late 2008 the Department abruptly reversed its long-standing position of not assessing retaliatory taxes against the New York surcharges." They liken this case to *New England Mutual Life Insurance Company v. Reece*, 83 S.W.2d 238 (Tenn. 1935), in which the definition of "gross premium receipts" was at issue. Since 1897 the commissioner had interpreted the term as allowing deductions for dividends. *Reece*, 835 S.W.2d at 238. In 1932 the commissioner determined that the term did not include deductions for dividends. *Id.* The Supreme Court found that each side had legal authority from other states to support its position, but that "the weight of the decided cases rather favors the insurance company." *Id.* at 240. The court was also influenced by the length of time the interpretation had remained in place combined with the fact that the legislature had reenacted the tax in numerous revenue bills since 1897 "without change of phraseology." *Id.* at 241. "When the Legislature re-enacts without change a statute that has been construed by officers charged with its enforcement, and that official construction is within the knowledge of the Legislature, such action of the Legislature is an adoption of that construction." *Id.* Thus, the court ruled that the 1897 interpretation of the statute was the correct one. *Id.* at 242.

It appears to us that the instant case is fundamentally different from *Reece*. The retaliatory tax is self-reported: "Each foreign insurance company doing business in this state shall furnish, over the signature and oath of its responsible officers, the necessary information for the computation of the taxes upon forms prescribed by the commissioner."

9

Tenn. Code Ann. § 56-4-218(a). As a result of an audit, which included a review of the New York tax structure, the Department became aware that not all New York insurance companies were reporting all the required assessments. The state presented the affidavit of the Examiner-In-Charge of the Premium Tax Unit of the Department's Insurance Division, Mr. Mark Brothers, who stated that he was not aware of any policy that excluded these assessments from the state burden for retaliatory tax purposes. Thus, rather than changing its position, the Department became aware of new information that required recalculation of the tax. Just because the Department did not collect the tax before does not mean it cannot be collected now. Failure to collect a tax "cannot work an estoppel against the State." *Porter Brown Limestone Co., Inc. v. Olson*, 648 S.W.2d 242, 244 (Tenn. 1982). We find no due process violation. The State assessed a tax. Claimants challenged the assessment. That is the process which Claimants are due.

Claimants also maintain that the Department's action violated the Uniform Administrative Procedures Act ("UAPA"): "State executive departments must adhere to those two fundamental precepts of the UAPA – notice and a public hearing – in formulating and implementing new regulatory policies, rules and standards." The Department's claim that it did not know of the surcharges, say Claimants, "rings hollow . . . given that both the New York Surcharges and Tennessee's retaliatory tax statute have been the law for many decades." It may be that the Department has been lax. It may be that the Department should have become aware of the surcharges sooner, even though they are not placed together in the New York code. The action of the Department, however, cannot be said to be based on a new policy or rule, but rather on new information—the existence of the surcharges. The use of new information that alters the incidence and amount of a preexisting tax is not the equivalent of a new rule or policy. We find no violation of the UAPA.

*Full Faith and Credit*

Article IV, Section 1 of the United States Constitution, the Full Faith and Credit Clause, states that, "Full Faith and Credit shall be given in each State to the public acts, Records and judicial Proceedings of every other State." Claimants argue that the state is misinterpreting New York law: "To allow the Department to rewrite New York law violates the constitutional requirement of the Full Faith and Credit Clause."

Because Tenn. Code Ann. § 56-4-218(a) requires that the charges be imposed "by the laws of any other state," we must look to New York law. However, the United States Supreme Court has stated:

> [t]o constitute a violation of the Full Faith and Credit Clause . . . , it is not
> enough that a state court misconstrue the law of another State. Rather, our

10

cases make plain that the misconstruction must contradict law of the other State that is clearly established and that has been brought to the court's attention.

*Sun Oil Co. v. Wortman*, 486 U.S. 717, 730-31 (1988); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 834-35 (1985); *W. Life Indem. Co. of Ill. v. Rupp*, 235 U.S.261, 275 (1914) ("[I]t is settled that where, in a state court, the validity of an act of the legislature of another state is not in question, and the controversy turns merely upon its interpretation or construction, no question arises under the 'full faith and credit' clause of the Federal Constitution."). There is no violation of the Full Faith and Credit Clause in this case.

*Equal Protection*

Claimants also argue a violation of equal protection. In *Western and Southern Life Insurance Company v. State Board of Equalization of California*, 451 U.S. at 668, the Supreme Court decided whether California's retaliatory tax violated the Equal Protection Clause of the Fourteenth Amendment by applying a rational basis test:

> In determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

The Alaska Supreme Court succinctly described the Supreme Court's holding in *Western and Southern* as follows:

> In *Western & Southern*, the United States Supreme Court upheld California's retaliatory tax as constitutional under the federal Equal Protection Clause. In upholding the statute, the Supreme Court reasoned that promotion of domestic industry by deterring barriers to interstate business is a legitimate state purpose and the mere fact that California was trying to promote its insurance industry by influencing the policies of other states through retaliatory taxation did not render the purpose illegitimate. It further concluded that it was reasonable for California to suppose that its retaliatory taxes would induce other states to lower the burdens on California insurers in order to spare their domestic insurers the cost of the retaliatory tax in California.

*Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1123 (Alaska 2007) (footnotes omitted).

11

The same reasoning applies to Tenn. Code Ann. § 56-4-218(a). It does not violate the Equal Protection Clause.

*Commerce Clause and Uniformity Clause*

Claimants argue that the tax violates the Commerce Clause. The Supreme Court in *Western and Southern*, 451 U.S. at 655, rejected the claim that California's retaliatory tax violated the Commerce Clause, holding that "the McCarran-Ferguson Act removes entirely any Commerce Clause restriction upon California's power to tax the insurance business."

Claimants also make an argument based on the Uniformity Clause, found in Article 1, section 8 of the United States Constitution.[6] They candidly recognize that this argument is inconsistent with *Prudential Insurance Co. v. Benjamin*, 328 U.S. 408 (1946) and *Western & Southern*, 451 U.S. 648. We are bound by the precedents established by the United States Supreme Court interpreting the federal constitution. *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 715 (Tenn Ct. App. 2003). Therefore, we reject Claimants' Uniformity Clause argument.

CONCLUSION

We affirm the Commission as to four of the charges and reverse as to two charges. We also reject all of Claimants' challenges to the constitutionality of the Tennessee retaliatory tax. Costs of appeal are assessed against the Claimants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6]The Uniformity Clause of Art. 1, § 8 of the United States Constitution states: "all Duties, Imposts and Excises shall be uniform throughout the United States."

12