**PEARLE HEALTH SERVICES, INC.,**
Plaintiff–Appellant,

v.

**Dudley TAYLOR, Commissioner of Revenue for the State of Tennessee,**
Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

April 16, 1990.

Joseph W. Gibbs, Patricia Head Moskal, Boult, Cummings, Conners & Berry, Nashville, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. and Reporter, William P. Sizer, Asst. Atty. Gen., Nashville, for defendant-appellee.

OPINION

DROWOTA, Chief Justice.

In this case the Plaintiff seeks refunds for taxes paid under protest for the time period September 1983 through October 1985. The taxpayer contends that it is entitled to a refund for several reasons. First, the taxpayer asserts that it did not exercise a taxable privilege within the meaning of T.C.A. § 67–6–201. The taxpayer also contends that the State of Tennessee assessed the incorrect type of tax against it by assessing a sales tax instead of a use tax. The taxpayer further argued that if the use tax was assessed against it that it was not a "dealer" within the meaning of T.C.A. § 67–6–102(4) and lacked the requisite nexus with Tennessee to be subject to a use tax. The Tennessee Department of Revenue (hereinafter "the State")

audited the taxpayer in 1985 and 1986. The tax assessment was limited to the purchases of optical merchandise and related products by thirteen Tennessee franchisees of the taxpayer from the taxpayer. On February 14, 1986 the State issued a notice of assessment against the taxpayer. A revised assessment was issued in January 1987. The taxpayer on April 20, 1987 paid under protest and brought suit. The Chancellor held for the State. We now affirm.

I

The facts are largely stipulated and not in dispute except whether or not the State of Tennessee imposed a sales tax or a use tax on the taxpayer.

Pearle, Inc., formerly Pearle Health Services, Inc. (hereinafter "Pearle") is a Delaware corporation with its principal place of business located in Dallas, Texas. Pearle is not qualified to do business in Tennessee. Pearle is currently a holding company and is the sole owner of several operating subsidiaries, one of which is Pearle Labs and Distribution, Inc. (hereinafter "Pearle Labs"). Pearle Labs distributes and sells optical products to retail optical stores. Pearle Labs is a Delaware corporation with its principal place of business located in Dallas, Texas. All of the operations of Pearle Labs occur in states other than Tennessee. Pearle Labs is not qualified to do business in Tennessee.

Another operating subsidiary currently owned by Pearle is Pearle Vision Center, Inc. (hereinafter "PVC") which is exclusively engaged in the business of operating and franchising retail optical stores doing business under the trade name of Pearle Vision Center. PVC is a Delaware corporation with its principal place of business located in Dallas, Texas. PVC is qualified to do business in Tennessee. The franchisees of PVC operate retail optical stores under the trade name Pearle Vision Center. The franchisees are independent owners of retail stores. During the assessment period, Pearle through Pearle Labs, sold optical related products to the franchisees who owned and operated retail optical stores in Tennessee. The optical merchandise sold by Pearle Labs was manufactured outside of Tennessee. The orders were filled in states other than Tennessee and the goods were shipped by common carrier.

Pearle every 15 to 18 months sent a quality inspector into Tennessee to the Franchisee Retail Stores to inspect the quality of products sold to the customers of the Franchisee Retail Stores. Pearle also sent representatives, who did not live in and were not located in Tennessee, to the Tennessee franchisees' stores. The representative came approximately every six to eight weeks to show new lines of eyeglass frames and optical products. No sales of the merchandise were made or solicited and no orders were taken by the representatives. PVC, as the franchisor of many of the retail stores in Tennessee, provided Pearle with its primary means of selling goods to customers in Tennessee.

The only fact in dispute is whether or not Pearle was assessed a use tax or a sales tax. The State determined that thirteen of the franchisee retail stores located in Tennessee had not reported and paid the tax liability that resulted from the franchisees' respective purchases of optical merchandise and related products from Pearle. After this determination the State in 1985 and 1986 audited the books and records of Pearle. The State determined that Pearle as the seller was liable for the tax resulting from the out of state sale of optical merchandise and related products to the retail optical stores located in Tennessee. A tax assessment was sent to Pearle on February 14, 1986, which read as follows: "There is a deficiency in the payment of Tennessee Sales and/or Use Tax for the period of Sept. 1983 through October 1985." A revised letter of assessment was sent on January 20, 1987, which contained the same language. Pearle contends that the tax assessed was a sales tax since neither of the notices indicated whether the tax assessed was a sales tax or a use tax. Pearle's contention that this is a sales tax is based on the deposition of two representatives of the State who, in their depositions, stated that the tax was a sales tax. The representatives were an Assistant Di-

rector of the Sales Tax Division and an Assistant Chief of Field Audits.

## II

■ Pearle's first argument is that the testimony of the two authorized representatives of the Commissioner unequivocally proves that the tax assessed against Pearle is a sales tax and therefore the Commissioner is precluded from collecting a use tax from Pearle. The Legislature has imposed a tax on the "sale at retail" and "use" of tangible personal property in this state. T.C.A. § 67–6–101 et seq. The Sales and Use Tax Act comprehensively imposes tax on the privileges of selling goods at retail in Tennessee or purchasing goods out of state for use in Tennessee. If the consumption of goods has occurred in the State of Tennessee then a tax liability has accrued. *Memphis Shoppers News v. Woods*, 584 S.W.2d 196, 200 (Tenn.1979). The state is entitled to its collection of revenue. *Id.* The Commissioner is not precluded from collecting the tax as a result of tax officials' "misrepresentation of the law, or for whatever reason." *Id.* The Commissioner can tax the privilege of the use or consumption of goods that has occurred within the state. Therefore, Pearle's argument that the Commissioner is bound by the statements of the Tennessee Department of Revenue representatives is without merit.

■ Pearle's primary argument is that Pearle did not engage in any taxable activity within the State of Tennessee under T.C.A. § 67–6–201. Pearle contends that the Commissioner lacks the authority to assess Pearle for the thirteen Franchisee Retail Stores unless the Commissioner can impose upon Pearle, an out-of-state seller, the duty to collect the use tax from them, the in-state purchasers/users.

Taxable activity includes the activity of a "dealer." Pursuant to T.C.A. § 67–6–501 persons who satisfy the definition of a "dealer" shall be liable to collect the tax imposed with respect to tangible personal property used or consumed within the State. Pearle asserts that it is not a dealer

as defined in T.C.A. § 67–6–102(4). Section 67–6–102(4) in pertinent parts is as follows:

(4) "Dealer" means every *person*, as used in this Chapter, who:

(B) Imports or causes to be imported tangible personal property from any state or foreign country, for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in this state;

(G) *Maintains or has within this state*, directly or *by a subsidiary*, an office, distributing house, sales room, or house, warehouse, or other place of business." (emphasis added).

PVC is a wholly-owned subsidiary of Pearle and PVC is present and doing business as numerous optical stores in Tennessee. However, the Appellant argues that its wholly-owned subsidiary in Tennessee does not directly conduct business or activities on its behalf in Tennessee. Pearle does not dispute that PVC conducted business activities within Tennessee but Pearle argues that the business done by PVC was exclusively that of PVC and not its parent Pearle. Additionally, Pearle contends that the business done within Tennessee by the Franchisee Retail Stores was exclusively that of the franchisees and not that of Pearle. The facts reveal that Pearle's own agents periodically come to Tennessee. These agents come to Tennessee every six to eight weeks to show new lines of frames to the franchisees and company stores. Every fifteen to eighteen months Pearle sends quality control inspectors to Tennessee to perform quality control audits. The franchisees also had to obtain permission from PVC before they could purchase optical products from suppliers other than Pearle. These visits were an essential link between Pearle and the franchisees. This ties the franchisees to the parent company as their primary supplier. Because of this link Pearle falls within the definition of a "dealer" as one who "causes tangible personal property ... to be used or consumed within this state;" and "maintains ... by a subsidiary...." Pearle, as a dealer under T.C.A. § 67–6–102(4), is engaged in taxable activity within the State of Tennessee.

■ In order for Pearle, as an out-of-state seller, to be required to collect and pay a use tax as a dealer, there must be a sufficient nexus between Pearle and the State of Tennessee. The nexus requirement is mandated by the Due Process Clause and Interstate Commerce Clause of the United States Constitution. Pearle contends that it does not have a sufficient nexus with the State of Tennessee to constitutionally permit a tax assessment against Pearle by the State of Tennessee.

A sufficient nexus is based on "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954). A simple but controlling question in determining whether a state can impose a use tax is whether the state has given anything for which it can ask a return. *National Bellas Hess v. Department of Revenue of the State of Illinois,* 386 U.S. 753, 756, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967).

In 1960 the U.S. Supreme Court, in *Scripto, Inc. v. Carson,* 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960) considered the issues of nexus and a state's ability to impose a use tax. The Court found that minimum connections existed to impose a use tax. In *Scripto* the Georgia company on which Florida imposed a use tax did not own, lease, or maintain any office, distributing house, warehouse or other place of business in Florida nor did it have any regular employee or agent there. The Georgia company did have ten brokers who went to Florida with catalogues, samples, and advertising material and were actively engaged in Florida as a representative of "Scripto for the purpose of attracting, soliciting and obtaining Florida customers." 362 U.S. at 209, 80 S.Ct. at 621. In *Scripto* the orders for the merchandise were sent by the brokers from Florida to Georgia. Pearle like *Scripto* is exploiting the consumer market by displaying its products by catalogue, samples or the like to the franchisees. 362 U.S. at 212, 80 S.Ct. at 622. Also like *Scripto,* Pearle is attracting, soliciting and obtaining Tennessee customers with its representatives even though the orders are not placed in Tennessee.

Pearle relies on *National Bellas Hess v. Dept. of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) as consistent with the constitutional limits of the due process and commerce clause. The Court in *Bellas Hess* noted that it "has never held that a State may impose the duty of use tax collection and payment upon a seller whose only connection with customers in the State is by common carrier or the United States mail." 386 U.S. at 758, 87 S.Ct. at 1392. Pearle argues that *Bellas Hess* is analogous to the case at hand. However, the Court finds Pearle's argument to be without merit because the State is not trying to impose a use tax upon a seller whose only contact with the State of Tennessee is by common carrier or the U.S. mail.

Pearle's nexus with Tennessee can also be established by *Standard Pressed Steel Co. v. State of Washington Department of Revenue,* 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). In *Standard Pressed Steel* the out-of-state corporation's employee was engaged in activities connected with the sales of the corporation but took no orders. The corporation's employee "made possible the realization and continuance of valuable contractual relations" between the out-of-state corporation and the in-state entity. 419 U.S. at 562, 95 S.Ct. at 708. Here, Pearle's employees with their samples made possible the valuable continuation of sales by Pearle to the franchisees. Pearle's employees brought samples for the franchisees to peruse. Like in *Standard Pressed Steel,* the orders were not placed with the in-state employee. Also, the employee in the *Standard Pressed Steel* case was involved in the assessment of product value and quality control like the inspectors who came from Pearle to Tennessee every fifteen to eighteen months.

In *Standard Pressed Steel* the employee resided in Washington state (the state imposing the tax) with no office except in his home and no secretary; however, the employee maintained an answering service. The Court finds this to be a minor distinc-

tion from the present case and finds that the emphasis of the U.S. Supreme Court was the realization of contractual relations. Therefore, we find the presence of the Pearle brokers in Tennessee and the quality control inspectors to create a nexus between the franchisees and Pearle.

Pearle's nexus with Tennessee is also established by *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977). In that case the Court found that a use tax was proper on the mail order business because *National Geographic* maintained two offices in California that solicited advertising for the magazine but performed no activities related to the mail order business from the District of Columbia. Orders for the Society's items offered for sale were mailed from California directly to the taxpayer's headquarters in Washington on order forms contained in the magazine or enclosed with announcements. The Supreme Court held that it was not material that the activities were not related but the Court looked instead to the society's enjoyment of the services provided by the municipality. 430 U.S. at 560, 97 S.Ct. at 1392. In the instant case the presence of the Pearle employees in Tennessee was *directly related* to the sale of optical merchandise to PVC stores located in Tennessee.

More recently in *D.H. Holmes Co. Ltd. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) the Supreme Court again dealt with nexus and the imposition of a use tax. The Court found that nexus existed because Holmes' activity was designed to increase sales in the State and the increase in sales was related to the advantages provided by the State. 486 U.S. at 32, 108 S.Ct. at 1624, 100 L.Ed.2d at 28. Nexus is again established under *Holmes* through Pearle's representatives and quality control personnel who increase sales in Tennessee and receive benefits from the State of Tennessee.

Pearle has a "definite link, a minimum connection" with the State of Tennessee. *Miller Bros.,* supra. A sufficient nexus

exists with the State of Tennessee to permit a use tax assessed against Pearle.

The judgment of the Chancellor is accordingly affirmed and the costs are taxed to the Appellant.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.