**MEMPHIS SHOPPERS NEWS, INC., Appellant,**

v.

**Jayne Ann WOODS, Commissioner, Department of Revenue, State of Tennessee, Appellee.**

**TOWERY PRESS, INC., Appellant,**

v.

**Jayne Ann WOODS, Commissioner, Department of Revenue, State of Tennessee, Appellee.**

Supreme Court of Tennessee.

July 2, 1979.

Edward A. Kizer, Goff, Canale, Walsh & Kizer, Memphis, F. P. Cribbs, Jr., Houston, Tex., for appellants.

William M. Leech, Jr., Atty. Gen., David S. Weed, Senior Asst. Atty. Gen., Nashville, for appellee.

## OPINION

FONES, Justice.

Appellants, Towery Press, Inc. and Memphis Shoppers News, Inc., brought suits for refunds of use tax plus interest paid under protest. T.C.A. § 67–2301 *et seq.* Both are Tennessee corporations with their principal place of business in Memphis and are engaged in printing and publishing a series of advertising handbills in a newspaper format for free distribution under the names "Whitehaven Press" and "East Memphis Shoppers News."

Appellants predicated their claims for refunds on the grounds that (1) their publications qualified for exemption from the use tax as "newspapers" and if not that, (2) estoppel and due process prevented assessment of a use tax because prior audits of their operations found their publications exempt.

The learned trial judge denied relief, relying upon our decision in *Shoppers Guide Publishing Co. v. Woods,* 547 S.W.2d 561 (Tenn.1977),[1] wherein we held a similar publication distributed in Chattanooga did not qualify as an exempt newspaper under T.C.A. § 67–3012 and Tennessee Revenue Ruling 1320–5–1–46. The trial court did not address the estoppel and due process issues.

The sole assignment of error on behalf of appellants in this Court is that they have been denied due process of law because the Department of Revenue changed its interpretation of the law and taxed appellants for a period of time when they paid no tax in reliance upon the Department's prior interpretation of the law.

Appellants insist that their factual situation is analogous to that of the taxpayers in

---

1. Subsequent to the decision in *Shoppers Guide Publishing Co.,* the Legislature passed chapter 487 of the Public Acts of 1977, effective May 28, 1977, which exempted "shoppers advertisers" from the sales and use tax.

*Gallagher v. Butler,* 214 Tenn. 129, 378 S.W.2d 161 (1964), and *New England Mut. Life Ins. Co. v. Reece,* 169 Tenn. 84, 83 S.W.2d 238 (1935), where they insist this Court held that the Due Process Clause prevents retroactive collection of taxes following a changed interpretation of the law. We think those cases are distinguishable.

## I.

In early 1970 the Department of Revenue conducted a sales and use tax audit of the books and records of Memphis Shoppers News, and the field auditors allegedly advised J. Roy Dance, vice president and general manager of the publication, that no additional tax liability was due and that Memphis Shoppers News qualified as an exempt newspaper. On March 16, 1970, the chief of the field audit section in Nashville sent a letter to Dance that read:

> "The audit made by this Department covering your Sales Tax liability for the period January 1, 1966 through December 31, 1969 has been reviewed. We are pleased to advise that based on the information contained in the audit report, no additional liability has been discovered. While this does not preclude some later assessment based on discovery of additional information, we do wish to congratulate you on the apparent excellent manner in which you complied with existing laws and regulations covering Sales and Use Taxes."

In March 1977, the Department of Revenue auditors again examined the books and records of Memphis Shoppers News, at which time Davis was informed that the publication did not qualify as an exempt newspaper. Consequently, the Department of Revenue assessed taxes, interest and adjustments against Memphis Shoppers News in the amount of $36,791.96 on August 16, 1977 for the period from March 1, 1974, through May 28, 1977.

Towery Press likewise was audited by the Department of Revenue in early 1967, and the field auditor stated at that time in his report that the publication Whitehaven Press was an exempt newspaper. Another audit report filed in 1969 also reached the same conclusion. However, as a result of a February 1977 audit, the Department of Revenue assessed a tax deficiency of $43,629.96 for the period between August 1, 1973 and October 31, 1976.

The chief of field audit for the sales and newspaper division of the Department of Revenue testified that his division consistently adhered to a policy that "treated any kind of advertising circular or publication as taxable." A Memphis field audit supervisor with twenty-six years experience also testified that appellants' publications always had been treated as advertising media. They attributed the failure to tax appellants at the time of the earlier audits to individual error on the part of the field men involved.

## II.

In *New England Mut. Life Ins. Co. v. Reece, supra,* it was undisputed that for a period of thirty-five years each successive commissioner of insurance had construed the term "gross premium receipts" to exclude dividends credited by foreign life insurance companies to their policyholders in Tennessee in computing an annual tax on gross premium receipts. In 1932 the commissioner reversed that ruling. The Court first discussed in great depth the merits of the long-adhered-to interpretation versus the interpretation first adopted in 1932 and concluded with the following:

> "We have the impression that the weight of the decided cases rather favors the insurance company. Such is the impression of the law writers." 169 Tenn. at 91, 83 S.W.2d at 240.

The Court thereafter fortified its conclusion already reached that the former interpretation was correct by pointing out that during the thirty-five year period,

> "[T]he Legislature could not have escaped knowledge of the fact that the office of the insurance commissioner was construing 'gross premium receipts' to exclude dividends credited. Notwithstanding the foregoing, the Legislature time after time enacted revenue bills taxing insurance companies upon 'gross premium receipts' without change of phraseology.

Under such circumstances we feel obligated to respect the ruling of the commissioner made in 1897 and adhered to for thirty-five years." 169 Tenn. at 93, 83 S.W.2d at 241.

Thereafter the Court devoted much attention to the principle that administrative or legislative constructions of statutes long-adhered to would be given great weight by the courts, except where the statute in question was plain, its meaning clear and the administrative or legislative construction was patently erroneous. This phase of the opinion was culminated by the following paragraph:

"We feel obliged, therefore, to hold that 'gross premium receipts' as those words are used in our revenue statutes do not include dividends of policyholders credited on their premiums. This is an application of the principles of stare decisis. These principles must obtain in any orderly government. To ignore these principles, to permit the tax laws to be changed by a precipitate ruling of a single administrative officer, savors of caprice and tyranny and lacks of due process." 169 Tenn. at 95–96, 83 S.W.2d at 242.

This Court has no hesitancy in finding (1) that the *New England* Court, having adjudicated that the former interpretation of gross premium receipts was legally correct, the remainder of the opinion was dicta and (2) neither principle espoused in dicta rests upon the denial of constitutional due process.

*Gallagher v. Butler, supra,* involved a number of taxpayers similarly situated and the issue common to all was whether, upon the liquidation of a corporation and distribution of its assets to shareholders or upon redemption for the purpose of retiring stock held by shareholders, the shareholder was taxable on that portion of the distribution that exceeded his original investment.

As in *New England,* the Court first dealt with the merits of that issue and reached the conclusion that such distributions were not taxable. Thereafter, the Court noted that for a period of about thirty years the

Department of Revenue had not taxed such corporate distributions and that, "Members of the bar, the accounting profession, and the general public have relied upon [those] ruling as being correct." 378 S.W.2d at 166. Again, to fortify its judicial construction of the tax statute, the Court invoked "a familiar rule of statutory construction" that where a statute is of doubtful meaning, administrative interpretations unchallenged over a long period of time are accorded persuasive weight by the Court and usually will be followed unless palpably erroneous. 378 S.W.2d at 166. Numerous cases were cited, including *New England Mut. Life Ins. Co. v. Reece, supra.* The *Gallagher* Court affirmatively stated that the thirty-year rule of the Department was "not palpably erroneous," which was rather obvious, the opinion having already judicially construed the distribution in question as non-taxable.

■ Thus in both *New England* and *Gallagher* the Court arrived at a judicial construction of the tax statutes in question identical to that of the administrative interpretation long adhered to by the Department of Revenue, and quite obviously those administrative interpretations were not "palpably erroneous." Also, the interpretations were, beyond question, uniformly applied by the Department of Revenue to all taxpayers similarly situated. Finally, the rule giving weight to administrative interpretations is merely an aid to judicial construction of doubtful tax statutes. It is not predicated upon estoppel or due process.

■ In the instant case, the underlying legal issue is whether or not these "shopper publications," which are distributed free, qualify for the exemption granted a "newspaper." An examination of the publications exhibited with this record reveals that they do not contain "even a modicum of local news." In *Shoppers Guide Publishing Co. v. Woods, supra,* we held that Rule 46 of the State Sales and Use Tax Rules and Regulations required that to qualify for the newspaper exemption a publication must contain " 'general news of the day, information of current events, [or] news of importance and of current interest to the general public.' " 547 S.W.2d at 563.

**200**

While we are not impressed with the probative value of the testimony of the witnesses presented by appellee, appellants' proof with respect to the audits conducted fails to establish that the Department of Revenue followed a statewide policy of exempting publications similar to theirs. We can judicially notice that the Department of Revenue audited Shoppers Guide Publishing Company in 1975 and found that its "Shoppers Guide" failed to qualify for the "newspaper" exemption. 547 S.W.2d at 562. Appellants' publications are indistinguishable from the "Shoppers Guide."

But assuming that their proof was of the same effect as that adduced in *New England* and *Gallagher,* to wit, that the newspaper exemption was uniformly extended to every Tennessee taxpayer similarly situated, for a long period of time, we could not grant appellants the relief they seek, because that interpretation of the statutes and rule would have been palpably erroneous. There is not one scintilla of factual support in this record upon which to contend that these publications contained " 'general news of the day, information, of current events, [or] news of importance and of current interest to the general public.' " 547 S.W.2d at 563.

The evidence reveals that the publications have not changed since the early audits, and Rule 46 was unchanged throughout the periods relevant to these cases.

### III.

■ Unfortunately, no relief is available to appellants under the doctrine of estoppel as a result of the failure of tax officials to collect the tax, because of misinterpretation of the law, or for whatever reason.

It is well settled in Tennessee that the doctrine of estoppel does not operate against the State with respect to the collection of its revenue. *See, e. g., Tennessee Blacktop, Inc. v. Benson,* 494 S.W.2d 760 (Tenn.1973); *John Ownbey Co. v. Butler,* 211 Tenn. 366, 365 S.W.2d 33 (1963); *Esso Standard Oil Co. v. Evans,* 194 Tenn. 377, 250 S.W.2d 569 (1952); *Murfreesboro Bank & Trust Co. v. Evans,* 193 Tenn. 34, 241 S.W.2d 862 (1951); *Gilman Paint & Varnish*

*Co. v. Carson,* 190 Tenn. 256, 229 S.W.2d 330 (1950); *American Bemberg Corp. v. Carson,* 188 Tenn. 263, 219 S.W.2d 169 (1949). Appropriately, no penalties were assessed against appellants.

Affirmed. Costs are adjudged against appellants.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.