# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 15, 2005 Session

## TENNESSEE FARMERS ASSURANCE COMPANY, et al v. LOREN L. CHUMLEY

**A Direct Appeal from the Chancery Court for Maury County**
**No. 02-199, 02-200     The Honorable Jim T. Hamilton, Judge**

---

### No. M2004-02530-COA-R3-CV - February 3, 2006

---

Taxpayer insurance companies brought suit in consolidated cases for refund of franchise and excise taxes which taxpayers had paid under protest. The taxes were assessed as a result of an audit conducted by the Tennessee Department of Revenue's field audit division and covering tax years 1995 through 1998. The taxpayers assert that they are allowed to take credit against the franchise and excise taxes for the amount they actually paid in gross premiums tax plus the credit they were granted against said tax by virtue of Tennessee investments. The Commissioner asserts that they are only entitled to credit on the franchise and excise taxes for the amount of gross premiums tax actually paid. The Chancery Court of Maury County entered judgment granting taxpayers motion for summary judgment holding that the commissioner's interpretation of the statutes defeated the incentives for investment in Tennessee securities provided under the gross premiums tax statutes. The revenue commissioner appealed. Finding that Commissioner of the Department of Revenue is not estopped from assessing franchise and excise taxes against the Appellee, either by statute or by equity, and that the credit against franchise and excise taxes includes only the amount of gross premiums taxes paid and collected by the Department of Commerce and Insurance, we vacate the summary judgment granted to the Appellees and grant summary judgment for Appellant.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Paul G. Summers, Attorney General and Reporter; Jimmy G. Creecy, Chief Special Counsel for Appellant, Loren L. Chumley, Commissioner of Revenue, State of Tennessee

Charles A. Trost, Michael G. Stewart, Ramin M. Olson of Nashville; Christopher M. Was of Nashville; Edward K. Lancaster of Columbia, Tennessee for Appellee, Tennessee Farmers Assurance Company and Tennessee Farmers Mutual Insurance Company

**OPINION**

Taxpayer insurance companies operate in the State of Tennessee with their principal places of business in Columbia, Tennessee. Tennessee Farmers Assurance Company ("Appellee Assurance") is a for-profit stock insurance company that was incorporated in 1991. Tennessee Farmers Mutual Insurance Company ("Appellee Mutual") is a for-profit mutual insurance company, which began operating in Tennessee in 1952. The Appellant, Loren L. Chumley, is the Commissioner of Revenue for the State of Tennessee ("Commissioner") charged with the duty to collect taxes and state revenues for the state, including franchise and excise taxes for which refund is sought by the Appellees.

The dispute between the parties centers around the interpretation of several sections of the Tennessee tax code as they existed in the pertinent tax years of 1995-1998, and how they interact with each other. Under T.C.A. § 56-4-205[1] all insurance companies writing life, fire, marine, fidelity, surety, casualty, liability insurance are required to pay a two and one-half percent (2.5%) tax on gross premiums paid by policyholders residing in Tennessee or on property located in Tennessee. Pursuant to T.C.A. § 56-4-210[2] all insurance companies falling into the categories

---

[1] T.C.A. § 56-4-205 (1998) reads, in pertinent part:

Tax on gross premiums - Minimum stipulated.

   (a) All insurance companies writing the forms of insurance enumerated in § 56-4-201, except life insurance companies and fraternal benefit associations, orders or societies, and except insurance companies and self-insurers covered by §§ 56-4-206 and 56-4-207, shall pay two and one-half percent (2.5%) on gross premiums paid by and for policyholders residing in this state or on property located in this state.

[2] T.C.A. § 56-4-210 (1998) reads, in pertinent part:

Reduction in tax for investments in state.

   (a) Any insurance company writing the forms of insurance enumerated in § 56-4-201, except life insurance companies, fraternal benefit associations, orders or societies, health and accident insurance companies, life and accident insurance companies and nonprofit group hospital service plans, meeting the conditions hereinafter set forth, shall be entitled to a reduction of or credit upon its gross premiums tax as hereinafter provided. Any such company desiring to qualify for such credit or reduction shall report to the commissioner on or before March 1 of each year the amount that the company had invested on December 31 of the year preceding, and on September 1 of each year the amount the company had invested as of the preceding June 30, in Tennessee securities as defined herein and the amount that it had invested on that date in similar securities in the other state in which it had its highest percentage of admitted assets invested. If the report of any such insurance company shows that such company as of December 31 of the year preceding (or as of the preceding June 30 with respect to taxes due to be paid on September 1) had invested in Tennessee securities, as herein defined, an amount which was not less that seventy percent (70%) nor more than eighty percent (80%) of the amount it had invested in similar securities in such other state in which it then had the highest percentage of its admitted assets invested, such insurance company's tax on its gross premiums mentioned above shall be reduced by an amount equal to twenty-five percent (25%) of such tax; if such report shows such insurance company had invested in such Tennessee securities on such date an amount which was in excess of eighty percent (80%) but not more than ninety percent (90%) of the amount it had invested in similar securities in such other state in which it then had the highest percentage of its admitted assets

(continued...)

covered by § 56-4-205, with a few exceptions, are entitled to a reduction of, or credit upon, its gross premiums tax for investments in Tennessee securities. The amount of credit depends on the level of investment made in Tennessee securities by the insurance company compared to the level of investment in the other state as designated and as described in T.C.A. § 56-4-210 as shown below:

| Investment Level in Tennessee Securities | Percentage of Credit or Reduction |
|---|---|
| 70% minimum, not more than 80% | 25% |
| 80% minimum, not more than 90% | 50% |
| 90% or greater | 75% |

Both Appellee Assurance and Appellee Mutual were subject to the premiums tax outlined in T.C.A. § 56-4-205, and were eligible for the credit for investment in Tennessee securities set forth in T.C.A. § 56-4-210 based upon their respective levels of investment in Tennessee securities. During the relevant tax years of 1995 through 1998, both Appellee Assurance and Appellee Mutual qualified and received a seventy-five percent (75%) credit upon their gross premium tax because they maintained a ninety percent (90%) or greater level of investment in Tennessee securities. Thus, the Appellees paid their premiums tax liability by taking the seventy-five percent (75%) in-state investment credit pursuant to T.C.A. § 56-4-210, and paid the remaining twenty-five percent (25%) liability in cash.

The State of Tennessee in the relevant years imposed two additional taxes on corporations that are pertinent to the present case. The Tennessee excise tax, pursuant to T.C.A. § 67-4-806,[3] is accessed annually and is equal to six percent (6%) of the net earnings of a corporation. The

---

[2](...continued)

invested, such company's tax on its gross premiums shall be reduced by an amount equal to fifty percent (50%) of such tax; and, if such report shows such insurance company had invested in such Tennessee securities on such date an amount which was in excess of ninety percent (90%) of the amount it had invested in similar securities in such other state in which it then had the highest percentage of its admitted assets invested, such company's tax on its gross premiums shall be reduced by an amount equal to seventy-five percent (75%) of such tax.

[3] T.C.A. § 67-4-806 (1998) reads, in pertinent part:

[Excise] Tax imposed.

(a) All corporations, cooperatives, joint-stock associations and business trusts, including regulated investment companies and real estate investment trusts, organized for profit under the laws of this state or any other state or country and doing business in Tennessee, including state chartered banks and national banks doing business in Tennessee and including state chartered savings and loan associations and federally chartered savings and loan associations doing business in Tennessee shall, without exception other than as provided herein, pay to the commissioner of revenue, annually, an excise tax, in addition to all other taxes, equal to six percent (6%) of the net earnings for the next preceding fiscal year for business done in this state.

Tennessee franchise tax, pursuant to T.C.A. § 67-4-904,[4] is also accessed annually and is a tax of twenty-five cents (25¢) on every one hundred dollars ($100) of the issued and outstanding stock, surplus and undivided profits of a corporation.  In the tax years of 1995 through 1998, Appellee Assurance and Appellee Mutual were subject to both the Tennessee excise and the franchise taxes.[5] However, pursuant to T.C.A. § 56-4-217[6] effective during the relevant tax years, "the amount of premiums taxes collected" from insurance companies is allowed as "a single credit against the sum total of the taxes imposed" by the franchise tax, and the excise tax.  The allowance of this credit is repeated in separate individual sections under both the franchise and excise tax law.  The pertinent parts of those sections are shown below:

### T.C.A. § 67-4-808. [Excise Tax] Credits.

> The tax herein imposed shall be in addition to all other taxes and there shall be no credit allowed upon it except the following:
> (1) On each annual excise tax return, insurance companies shall be allowed, as provided in § 56-4-217, a credit of the net amount of gross premiums tax paid which is measured by a period that corresponds to the excise tax period on which the return is based, plus any amount used to offset payment to the Tennessee guaranty association which has not otherwise been recovered, but not including the gross premiums receipts tax paid by fire insurance companies for the purpose of executing the fire marshal law.[7]

### T.C.A. § 67-4-908(a). [Franchise Tax] Credits for gross premiums tax.

---

[4] T.C.A. § 67-4-904 (1998) reads, in pertinent part:
[Franchise] Rate of Tax.
> (a) The privilege tax hereby imposed shall be a tax of twenty-five cents (25¢) on the one hundred dollars ($100), or major fraction thereof, of the issued and outstanding stock, surplus and undivided profits of each such corporation as shown by the books and records of such corporation at the close of its last fiscal year preceding the making of the sworn report hereinafter required.

[5] There is no dispute as to whether or not the taxpayer insurance companies were subject to the franchise and excise taxes for these years, only the actual amount owed.

[6] T.C.A. § 56-4-217 (1998) reads:
Credit against franchise and excise taxes.
> The amount of the premium taxes collected under the provisions of §§ 56-4-201– 56-4-214 shall be a single credit against the sum total of the taxes imposed by the Franchise Tax Law, compiled in title 67, chapter 4, part 9 and by the Excise Tax Law, compiled in title 67, chapter 4, part 8.

[7] This code section was repealed in 1999.  The Tennessee excise tax law is currently at T.C.A. § 67-4-2009. While the wording has changed slightly, the content remains the same.  We use the code as it appeared in the years relevant to this cause of action.

(a) In accordance with § 56-4-217, there shall be credited upon the tax hereby imposed the net amount of gross premiums tax paid which is measured by a period that corresponds to the franchise tax period on which the return is based, plus any amount used to offset payment to the Tennessee guaranty association which has not otherwise been recovered, but not including the gross premiums receipts tax paid by fire insurance companies for the purpose of executing the fire marshal law.[8]

What constitutes the amount of credit allowed against the state franchise and excise taxes is the primary issue in this case.

During the tax years at issue, 1995 through 1998, Appellees Mutual and Assurance were each entitled to a seventy-five percent (75%) in-state investment credit against premiums taxes under .T.C.A. § 56-4-210 for maintaining investments in Tennessee securities exceeding the ninety percent (90%) statutory threshold. The Appellees then calculated the credit allowed insurance companies towards their excise tax pursuant to T.C.A. § 67-4-808, and franchise tax pursuant to T.C.A. § 67-4-908(a), in the amount of their entire premiums tax liability; the twenty-five percent (25%) paid in cash, and the seventy-five percent (75%) that was offset by the Appellees over ninety percent (90%) investment in Tennessee securities.

The Department of Revenue conducted a field audit of the Appellees, after which the Commissioner, on June 27, 2000, assessed the Appellees with additional franchise and excise tax. The assessment against the Appellees was due to the Commissioner allowing the Appellees a credit against its franchise and excise tax only in the amount of the gross premiums tax paid in cash and collected by the Department of Commerce and Insurance. The Commissioner disallowed the credit against the franchise and excise tax for the credit granted on the gross premiums tax because of investment in Tennessee securities. The Commissioner assessed Appellee Mutual additional franchise and excise tax in the amount of $3,899,401.00 plus interest in the amount of $1,420,668.18 for a total of $5,320,069.18 for the period January 1, 1995 through December 31, 1998. Due to the accumulation of additional interest, Appellee Mutual paid $5,925,449.00 to the Department of Revenue under protest on October 4, 2001.

On August 13, 2000, Appellee Assurance was likewise assessed additional franchise and excise tax in the amount of $7,798,010.00 plus interest in the amount of $3,131,468.62 for a total of $10,929,478.62 for the period January 1, 1995 through December 31, 1998. Due to the accumulation of additional interest, Appellee Assurance paid $12,004,654.00 to the Department of Revenue under protest on October 4, 2001. Both Appellees filed claims for refunds in the amounts of $5,925,449 (Mutual) and $12,004,654 (Assurance), and both claims were denied.

---

[8] This code section was repealed in 1999. The Tennessee franchise tax law is currently at T.C.A. § 67-4-2109(a). While the wording has changed slightly, the content remains the same. We use the code as it appeared in the years relevant to this cause of action.

On April 2, 2002, Appellee Mutual filed suit seeking a refund of franchise and excise taxes paid for the 1995 through 1998 period in the amount of $5,925,449 plus interest, expenses, and attorney's fees. Likewise, on April 2, 2002, Appellee Assurance filed suit seeking a refund of franchise and excise taxes paid for the calendar tax years of 1995 through 1998 in the amount of $12,004,654.00 plus interest, expenses, and attorney fees. The Appellees contended that under the provisions of T.C.A. §§ 56-4-217 (credit against franchise and excise taxes), 67-4-808 (excise tax credit for gross premiums tax), and 67-4-908(a) (franchise tax credit for gross premiums tax) they were entitled to a credit against the Tennessee franchise and excise taxes for the amount of gross premiums tax before the reduction of the premiums tax for their ninety percent (90%) investment in Tennessee securities. The Appellees based their argument upon their interpretation of the relevant statutes and the legislature's intent to provide an incentive for insurance companies to invest in Tennessee securities. The Appellees also argued that the Commissioner, in his assessment of additional franchise and excise taxes, was attempting to institute a retroactive change in policy. The Appellees assert that the 1985 case of *National Life and Accident Insurance Co. v. Olsen, Commissioner of Revenue,* Davidson County Chancery No. 83-1260-II, approved a credit by consent of the parties against franchise and excise taxes due by insurance companies for the full amount of the companies premiums tax debt, regardless of whether paid or offset by Tennessee investments. The Appellees assert that the Commissioner's assessment represents a change in policy which violates T.C.A. § 67-1-108.[9] Additionally, Appellees assert that because the Department of Revenue had conducted desk audits of both Appellee Mutual and Appellee Assurance for the years 1984 through 1988 and had allowed the insurance companies to take a credit against franchise and excise taxes for the gross amount of premiums tax paid, which includes the investment credit for those years, the Commissioner was now estopped from assessing the additional taxes.

On June 3, 2002, Commissioner filed an Answer to both Complaints contending that the plain wording of the statutes granting a credit against franchise and excise taxes for gross premiums tax limits the credit to the "net amount of gross premiums tax paid" and "collected." Further, the Commissioner contended that the *National Life* case was not dispositive in that it dealt with valuation fees paid and remitted to the Department of Commerce and Insurance, thus having no application to the credit for investments in Tennessee securities. The Commissioner also argued that the Department of Revenue was not estopped from assessing franchise and excise taxes. By Order of the Maury County Chancery Court dated may 29, 2002, the cases were consolidated.

On March 1, 2004 Appellees filed a motion for summary judgment arguing that the Commissioner's assessments against them was invalid because (1) the General Assembly intended to credit all premiums tax paid whether in cash or in credits obtained for investment in Tennessee securities against the franchise and excise taxes paid by insurance company, (2) the Commissioner's

---

[9] T.C.A. § 67-1-108 (1998) reads:

Prospective application of law.

> If the Commissioner changes the policy of the Department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law.

decision to limit the credit for gross premiums tax paid to include only that part of premiums tax paid in cash represented a change in policy which cannot be applied retroactively to the period at issue; and (3) the Commissioner was estopped from denying the Appellees the benefit of tax credits earned by them for investing, to their financial detriment, in low interest Tennessee securities. On March 31, 2004, the Commissioner filed a motion for summary judgment asserting that (1) under the plain and unambiguous provisions of T.C.A. §§ 67-4-806, 67-4-904 and 56-4-217 Appellees are entitled as a credit against the Tennessee franchise and excise tax only the net amount of gross premiums taxes paid and collected by the Department of Commerce and Insurance, (2) Commissioner's application of these statutes is not a change in policy in violation of T.C.A. § 67-1-108, and (3) Commissioner is not estopped from collecting the taxes at issue. A hearing was held on April 16, 2004 to consider both motions for summary judgment. The trial court issued an Order on September 9, 2004 and entered an Order and Judgment on October 15, 2004 granting the Appellees motion for summary judgment and denying the Commissioners motion for summary judgment. The trial court's Order of September 9, 2004, which was incorporated into the trial court's Order and Judgment of October 15, 2004, reads, in pertinent part:

> The Legislature has enacted a series of statutes which work to affect the business dealings of Insurance Companies transacting business in Tennessee. T.C.A. § 56-4-210 provides a reduction or credit for the satisfaction of the gross premiums tax liability imposed by T.C.A. § 56-4-205(a). There is no disagreement between the parties that it was the intent of the Legislature (by passing T.C.A. § 56-4-210) to create a business incentive for Insurance Companies to invest their funds in Tennessee securities and other investments. The parties do not dispute the application of T.C.A. § 56-4-210 or its interpretation. The Commissioner takes the position that there should be a strict construction of T.C.A. § 56-4-217. The result of reading that section under the Commissioner's view is to create an interpretation of that statute which negates the benefits of the credit created by T.C.A. § 56-4-210. The Commissioner further asserts that only T.C.A. § 56-4-217 should be viewed as to the interpretation of that Code section. Although a literal reading of the statute by the Commissioner would favor the position of the Commissioner, that same result would defeat the purpose of T.C.A. § 56-4-210.

> Both parties agree that the Legislature intended to influence the business activities of Insurance Companies by offering the credit as set out against the gross premiums tax. An interpretation of the statute allowing a credit against the franchise and excise taxes (T.C.A. § 56-4-217) which removes those incentives puts the two statutes in patent conflict and defeats the clear intent of the Legislature.

Statutes should be construed harmoniously so that one does not defeat the purpose of the other. *Thomas Jefferson Insurance Co. v. Williams,* 385 S.W.2d 908 (Tenn. 1965); *Sharp v. Richardson,* 937 S.W.2d 846 (Tenn. 1986). The two statutes applied in tandem should allow the investment incentive as intended by the Legislative body in a reading of these statutes.

Then comes the question of policy change and the applicability of T.C.A. § 67-1-108. The undisputed facts show that there was a substantial change of the position within the Department of Revenue in order to assess the deficiencies in this case. Law prior to T.C.A. § 67-1-108 held little comfort or support for the taxpayer in reliance upon stated positions of the Department of Revenue. Estoppel arguments by the taxpayer were extremely difficult to make if they existed at all. *Memphis Shoppers News, Inc. v. Woods,* 584 S.W.2d 196 (Tenn. 1979). Subsequently, T.C.A. § 67-1-108 was enacted and reads as follows:

> "If the Commissioner changes the policy of the Department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law."

It is undisputed that the Commissioner had taken the position in 1984 that credits should be allowed against the gross premiums tax and that the gross premiums tax amount would then be allowed as a credit in computing the franchise and excise taxes due. This interpretation of the law was communicated by the Commissioner of Revenue to the Attorney General. That position was acted on in an adversarial audit in a claim for refund. The issue was considered, discussed and acted upon at the highest level of the State taxing authority. Those actions made the taxpayer aware of the position of the Department of Revenue as to that issue. Acquiescence of the Department of Revenue after consideration of the issue by the Commissioner is the policy of the Department. Since the enactment of T.C.A. § 67-1-108 on March 6, 1986, the Commissioner is estopped to deny the position taken in 1984 as it affects any tax filing after March 6, 1986.

On October 7, 2004 and October 20, 2004, the Commissioner filed timely Notices of Appeal and presented the following issues for review:

1.      Whether the credit for gross premiums tax paid under the provisions of the Tennessee franchise and excise tax statutes, T.C.A. §§ [67-4-808] and [67-4-908(a)], is the gross premiums tax liability before reduction/credit for the investment in Tennessee securities authorized by T.C.A. § 56-4-210 or the net amount of gross premiums tax actually paid and remitted to the Department of Commerce and Insurance?

2.      Whether the Commissioner of Revenue's decision to disallow a credit against franchise and excise taxes for premiums tax offset by the investment in Tennessee securities represents a change in policy by the Department of Revenue and a violation of T.C.A. § 67-1-108?

Appellees present the following additional issue for review:

3.      Whether the Commissioner of Revenue is equitably estopped from assessing franchise and excise taxes against the Appellees for tax years 1995 through 1998 due to Appellees' detrimental reliance on the Department of Revenue's allowance of a credit against franchise and excise taxes for the investment in Tennessee securities in the year 1984 and following desk audits conducted in each of the pertinent tax years?

It is well settled in Tennessee that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995). Construction of a statute is a question of law and is particularly appropriate for summary judgment. *See Metro. Dev. & Housing v. Trinity Marine Nashville,* 40 S.W.3d 73, 76 (Tenn. Ct.

App. 2000). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk,* 954 S.W.2d 722, 723 (Tenn. 1997).

We will first consider issue number two, which we restate for clarity:

2. Whether the Commissioner of Revenue's decision to disallow a credit against franchise and excise taxes for premiums tax offset by the investment in Tennessee securities represents a change in policy by the Department of Revenue and a violation of T.C.A. § 67-1-108?

In order to determine whether the trial court erred in granting summary judgment to the Appellees, this Court must first determine whether the trial court erred when it held that the Commissioner's decision to disallow a credit against franchise and excise taxes for premiums tax offset by the investment in Tennessee securities was a violation of T.C.A. § 67-1-108 because it represented a change in policy by the Department of Revenue that the Department was attempting to apply retroactively. T.C.A. § 67-1-108 reads:

> Applicability of taxability policy changes.
>
> If the commissioner changes the policy of the department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law.

The Appellees contend, and the trial court agreed, that in 1984 the Department of Revenue ("Department") had taken the position that credits for investment in Tennessee securities should be allowed against the gross premiums tax and that the gross premiums tax amount would then be allowed as a credit in computing the franchise and excise taxes due. The Appellees argue that in 2000 when the Department reviewed the Appellees tax returns for the tax years 1995 through 1998 and disallowed a credit against franchise and excise taxes, which included the credit for investment in Tennessee securities, that this was a reversal of long-standing Department policy. The Appellees assert that under T.C.A. § 67-1-108 the Department may not go back and retroactively apply that policy to years prior to 2000. The trial court held that there "was a substantial change of position within the Department of Revenue in order to assess the deficiencies in this case," and that "it is undisputed that the Commissioner had taken the position in 1984 that credits should be allowed against the gross premiums tax and the gross premiums tax amount would then be allowed as a credit in computing the franchise and excise taxes due."

In support of their argument that in 1984 the policy of the Department was that credits for investment in Tennessee securities would be allowed against the gross premiums tax, and that the gross premiums tax amount would then be allowed as a credit in computing the franchise and excise taxes due, the Appellees present a series of documents and cite the case of *National Life and Accident v. Olsen, Commissioner*. The first document is a memorandum dated October 9, 1984,

from Donald Jackson, the Commissioner of the Tennessee Department of Revenue in 1984 to Commissioner Hubert McCullough, Commissioner of Commerce and Insurance in 1984. The memorandum reads, in pertinent part:

> The valuation fee is levied on insurance companies for the service provided by the Department of Commerce and Insurance in valuing the reserves of domestic life companies. It is levied at the rate of 3 cents per $100 of reserves. Fee levied in 1983 totaled $2,543,601.13.
>
>             \*               \*            \*
>
> TCA 56-4-211 and TCA 56-4-217 provide that:
>
> (1) the valuation fee is a credit against premium taxes collected.
> (2) Premium taxes are a credit against the sum total of franchise and excise taxes.
>
> For some years, the Department has allowed insurance companies to deduct both valuation fees and gross premiums taxes from their corporation franchise/excise tax liability. However, a close reading of the statute indicates that this probably was not the intent of the legislature, and the Department changed its position in 1983 so that the **valuation fee** is a credit only against the premiums taxes and not against the franchise and excise taxes (emphasis added).

In response to the Department's change in policy in 1983, as discussed in the memorandum above, concerning the disallowance of a dual credit allowed for valuation fees against both the premiums tax and the franchise and excise tax, National Life and Accident Insurance Company brought suit against the Commissioner of Revenue to recoup $2,378,440 in taxes that had been paid in protest. ***National Life and Accident Insurance Co. v. Olsen,*** Davidson County No. 83-1260-II. Prior to the end of the trial, the Commissioner of Revenue recommended that the suit be settled and that the Department's prior policy of allowing valuation fees credits to be taken as a credit against franchise and excise taxes be reinstated. This compromise by the Department was articulated in the trial court's final order of April 24, 1985, which reads, in pertinent part:

> Said compromise being based upon agreement that the amount of gross premiums tax credited against the franchise and excise taxes under T.C.A. § 56-4-217 should include the **valuation fee** that is counted against the gross premiums tax pursuant to T.C.A. § 56-4-211, in accordance with the traditional practice of the Department of Revenue (emphasis added).

Prior to the Commissioner settling the National Life case, the Commissioner sent a letter on March 4, 1985 to Michael Cody, the Tennessee Attorney General in 1985, outlining the revision in the Department's position regarding the credits allowed for valuation fees paid by insurance companies. The letter reads:

> For more than forty years, prior to 1981, the Tennessee Department of Revenue permitted insurance companies to take credit for gross premiums taxes as reported on the franchise excise tax returns.
>
> In 1981, Revenue reconsidered the pertinent statutes and began to disallow such credits when the gross premiums tax liability was reduced by the payment of valuation fees. Assessments were accordingly made against insurance companies, and some taxes were paid under protest. A suit was filed by the taxpayers seeking a refund.
>
> It now appears after further legal research that the Department of Revenue's position is relatively weak, and we believe that the best course of action is to reinstate the policy in effect prior to 1981. The interpretation of the statutes by the Department, through a succession of administrators, over a period of forty years, will obviously weigh heavily on the outcome, especially if the courts should find ambiguities. Such reinstatement of policy will result in cancellation of the assessments made against the insurance companies, and refund of those payments involved in the court suit. Of course, the final determination will be made by your office and we shall abide by your decision.

Contrary to the Appellees position, the Commissioner argues that there was no change in policy in relation to the credit for investment in Tennessee securities, and if there was any change in policy at all it related solely to the credit allowed against premiums taxes for payment of valuation fees paid by an insurance company. The trial court's interpretation of the documents that the Appellees used to allege a change in policy by the Department, and the trial courts's ultimate finding that said documents constitutes a change in policy is a question of law. As such, we review the trial court's judgment *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusion of law. *See* Tenn. R. App. P. 13(d); ***Warren v. Estate of Kirk,*** 954 S.W.2d 722, 723 (Tenn. 1997).

The Appellees reliance on the 1984 memorandum from Commissioner Donald Jackson to Commissioner of Commerce and Insurance, Hubert McCullough, his 1985 letter to the Attorney General, and the outcome of the *National Life* case are misplaced. These deal solely with the

valuation fees[10] assessed against insurance companies and are not relevant to the Department of Revenue's policy or position on the credit allowed for investment in Tennessee securities by insurance companies. The valuation fee was paid and collected by the Commissioner of Commerce and Insurance and was established to pay the salaries and expenses of actuaries employed by that department. The valuation fee was paid in cash and collected by the Department of Commerce and Insurance and the fee was then credited towards an insurance company's franchise and excise tax. The documents cited by the Appellees prove that the Department of Revenue's position in 1985 was to allow a credit against franchise and excise for the amount of valuation fees paid by an insurance company, but give no indication of, and provide no evidence that, the Department's position in 1985 was to allow a credit against franchise and excise taxes for the gross premiums tax of an insurance company including the amount offset by investment in Tennessee securities. Therefore, the undisputed evidence presented by the Appellees that the Commissioner of Revenue's decision in 2000 to disallow a credit against franchise and excise taxes for premiums tax offset by the investment in Tennessee securities does not represent a change in policy by the Department and is not in violation of T.C.A. § 67-1-108.

Consequently, we hold that the trial court erred in finding that the Commissioner's disallowance of the credit against franchise and excise taxes for gross premiums tax was an attempt to apply a change in policy retroactively in violation of T.C.A. § 67-1-108.

We next consider issue number three:

> 3. Whether the Commissioner of Revenue is equitably estopped from assessing franchise and excise taxes against the Appellees for tax years 1995 through 1998 due to Appellees' detrimental reliance on the Department of Revenue's allowance of a credit against franchise and excise taxes for the investment in Tennessee securities in the year 1984 and following desk audits conducted in each of the pertinent tax years?

The Appellees argue that the Commissioner of Revenue is equitably estopped from assessing additional franchise and excise taxes against the Appellees for tax years 1995 through 1998 due to Appellee's detrimental reliance on the Department of Revenue's allowance of a credit against franchise and excise taxes for the investment in Tennessee securities in the year 1984, and following desk audits conducted in 1995 through 1998.

The Appellees assert that on September 11, 1986, Appellee Mutual filed an amended 1984 franchise and excise tax return seeking a refund of $437,374. The Appellees contend that they were entitled to the refund because it had paid $3,311,001 in gross premiums tax for 1984 which more than offset the franchise and excise tax due. The Appellees claim that they were seeking this refund because they had reduced their 1984 franchise and excise tax by the net amount of premiums tax

---

[10] The Valuation fee was repealed by Chapter 215, 1985 Public Acts.

paid, and had neglected to include the amount offset by investment in Tennessee securities in reliance on the court's decision in National Life, *supra*. However, in its amended 1984 Franchise and Excise Tax Return, Appellee Mutual makes no reference to its investment in Tennessee securities as the reason for the amendment. The claim for refund states:

> Payment exceeded tax liability since gross premiums tax credit exceeded total liability on return. This Department has prepared this claim and is in possession of proper proof and facts supporting the refund.

By letter dated April 15, 1987, the Department granted Appellee Mutual's claim for refund. The letter stated, in pertinent part:

> The estimated payments made to the Department of Revenue were not taken as a credit on your return. Since the gross premiums tax credit exceeded the liability on the return, we find there is an overpayment of $437,374.00.
>
> We are now processing a Claim for Refund for the net overpayment.

The letter was signed by Ms. Diane Cunningham for Allan Curtis, Director of the Franchise, Excise Tax Division. Ms. Cunningham testified that she processed the claim for refund, and that she would have confirmed the calculation of Appellee Mutual's franchise and excise credit by reviewing Appellee Mutual's premiums tax return or by calling the Department of Commerce and Insurance.

The Appellees assert that by granting the refund to Appellee Mutual in 1987 for the tax year 1984, the Department confirmed that taxpayer insurance companies were allowed to credit or reduce their franchise and excise tax by the gross amount of premiums tax paid, including the amount of credit for investment in Tennessee securities. Furthermore, the Appellees assert that they relied upon this determination by the Department, and thereafter, continued to deduct from their franchise and excise tax the gross amount of premiums tax paid through the tax year 1998, without the Department's taking issue with, or assessing additional taxes because of this practice. The Appellees assert that the Department repeatedly ratified the basis for Appellees continuing reliance by not challenging Appellees use of the full credit for investment in Tennessee investments against franchise and excise tax on subsequent audits. Specifically, the Appellees refer to desk audits conducted by the Department in the tax years in 1995 through 1998 where the Department did not revise the Appellees franchise and excise tax liability. The Appellees argue that this reliance on their interpretation of the Department's position resulted in the Appellees investing larger amounts of money in lower-yielding Tennessee securities than they would have otherwise made in order to reduce their franchise and excise tax debt. The Appellees state that having relied on this interpretation, it would be to their economic detriment if they were not allowed to credit their franchise and excise tax with the gross amount of premiums tax paid, including the amount offset

by Tennessee investments. Further, the Appellees argue that the Department should be estopped from assessing additional franchise and excise taxes for the years 1995 through 1998, because the Department took affirmative action that clearly induced the Appellees to act to their detriment, as distinguished from silence, non-action or acquiescence.

The Commissioner contends that the Appellees reliance and misapplication of the valuation fee credit allowance made by the court in *National Life,* does not prevent the Department from assessing properly due franchise and excise taxes. Moreover, the Commissioner argues that the Tennessee Supreme Court has ruled that the doctrine of estoppel does not operate against the State with respect to the collection of revenue as stated in *Memphis Shoppers News, Inc. V. Woods,* 584 S.W.2d 196,2000 (Tenn. 1979). Further, the Commissioner asserts that, as stated in the Tennessee Supreme Court decision of *Porter Brown Limestone Co., Inc. v. Olsen,* the Department of Revenue is not estopped from assessing taxes despite the Department's failure to impose tax liability for similar transactions on prior audits. *Porter Brown Limestone Co., Inc. v. Olsen,* 648 S.W.2d 242, 244 (Tenn. 1983).

It appears to this court that the Department of Revenue erred in its assessment of Appellee Mutual's franchise and excise tax liability for the tax year 1984. The Appellees provide evidence that they received a $437,374.00 refund, based on their amended 1984 claim submitted in 1987, because they took a credit against franchise and excise taxes for the gross amount of premiums tax paid, including the portion of the premiums tax offset by investment in Tennessee securities. The Appellees then relied on this determination of the Department when filing subsequent returns and continuing to take a credit against franchise and excise taxes for the gross amount of premiums tax paid, including the portion of the premiums tax offset by investment in Tennessee securities. However, the rulings from the Tennessee Supreme Court are clear. Reliance by a taxpayer upon a Department of Revenue audit or interpretations by individuals in the Department of Revenue does not estop the Department from assessing taxes. *See Memphis Shoppers News, Inc. v. Woods,* 584 S.W.2d 196, 200 (Tenn., 1979). *See, e. g., Exchange Mut. Ins. Co. v. Olsen,* 667 S.W.2d 62, 63 (Tenn.,1984) (holding that surety was liable for taxes incurred upon sale of alcoholic beverages for consumption on premises of restaurant, and fact that subordinate official of Department of Revenue erroneously sent letter of discharge to surety could not estop state from collecting tax)*; John Ownbey Co. v. Butler,* 365 S.W.2d 33, 38 (1963) (ruling that State cannot be estopped because it did not attempt to collect taxes, even though failure might have resulted from misconstruction of law or might have been a gratuity)*; Esso Standard Oil Co. v. Evans,* 250 S.W.2d 569, 573 (1952) (stating where there was no formal remission of privilege taxes by responsible authority, and there was substantial evidence that matter of tax liability was held in abeyance and never decided, state was not estopped and precluded from collecting taxes). Citing the decision in *Memphis Shoppers News, Inc. V. Woods,* 584 S.W.2d 196,2000 (Tenn. 1979), the Tennessee Supreme Court states:

> The failure of a representative of the Department of Revenue to
> collect a tax, whether because of a mistaken construction of the law
> or other reason, cannot work an estoppel against the State.
> Taxpayers owe and it is the duty of the Commissioner of Revenue
> to collect the taxes due the State under the law as written by the

> Legislature and interpreted by the Courts, not as interpreted or overlooked or otherwise omitted by various field auditors or other individuals in the Department of Revenue.

*Porter Brown Limestone Co., Inc. v. Olson,* 648 S.W.2d 242, 244 (Tenn.,1982). The doctrine of estoppel does not operate against the Commissioner of the Department of Revenue with respect to the collection of the Appellees' franchise and excise taxes for the years 1995 through 1998 brought about by Appellees' detrimental reliance on the Department's previous acts.

We next consider issue number one:

> 1. Whether the credit for gross premiums tax paid under the provisions of the Tennessee franchise and excise tax statutes, T.C.A. §§ [67-4-808] and [67-4-908(a)], is the gross premiums tax liability before reduction/credit for the investment in Tennessee securities authorized by T.C.A. § 56-4-210 or the net amount of gross premiums tax actually paid and remitted to the Department of Commerce and Insurance?

We consider whether the trial court erred when it determined that the credit for gross premiums tax paid under the provisions of the Tennessee franchise and excise tax statutes, T.C.A. §§ 67-4-808 and 67-4-908(a), is the gross premiums tax liability before reduction/credit for the investment in Tennessee securities authorized by T.C.A. § 56-4-210, rather than the net amount of gross premiums tax actually paid and remitted to the Department of Commerce and Insurance. Tennessee imposes a two and one half percent (2.5%) gross premiums tax on all insurance companies conducting business in Tennessee pursuant to T.C.A. § 56-4-205. These taxes are paid to and collected by the Commissioner of Commerce and Insurance. Under T.C.A. § 56-4-210(a) an insurance company is allowed a reduction of or credit upon the gross premiums tax for investments in Tennessee securities. The reduction or credit is on a graduated basis running from twenty-five percent (25%) to seventy-five percent (75%) as shown in the table, *supra*. During the tax years at issue in this case, 1995 through 1998, Tennessee also imposed franchise and excise taxes on insurance companies doing business in Tennessee pursuant to T.C.A. §§ 67-4-806 and 67-4-904.[11] However, the Tennessee tax code allows insurance companies a credit against franchise and excise taxes of "the net amount of gross premiums tax paid" pursuant to T. C. A. § 56-4-217 (1998). The statute reads:

**T.C.A. § 56-4-217. Credit against franchise and excise taxes.**

---

[11] For tax years beginning after 1998, T.C.A. § 56-4-217(b) provides for an elimination of the franchise and excise tax imposed upon insurance companies on a gradual basis until the tax is completely eliminated for tax years beginning after December 15, 2002. Insurance companies will not be liable for franchise and excise tax after that date.

The amount of the premium taxes ***collected*** under the provisions of §§ 56-4-201 — 56-4-214 shall be a single credit against the sum total of the taxes imposed by the Franchise Tax Law, compiled in title 67, chapter 4, part 9 and by the Excise Tax law, compiled in title 67, chapter 4, part 8 (emphasis added).

The allowance of a credit against franchise and excise taxes for premiums tax paid by insurance companies is repeated in T.C.A. §§ 67-4-808(1) and 67-4-908(a). The pertinent parts of those statutes read:

**T.C.A. § 67-4-808 (1998). [Excise Tax] Credits.**

The tax herein imposed shall be in addition to all other taxes and there shall be no other credit allowed upon it except the following: (1) On each annual excise tax return, insurance companies shall be allowed, as provided in § 56-4-217, ***a credit of the net amount of gross premiums tax paid*** . . . (emphasis added).

**T.C.A. § 67-4-908(a)(1998). [Franchise Tax] Credits for gross premiums tax.**

(a) In accordance with § 56-4-217, there shall be ***credited upon the tax hereby imposed the net amount of gross premiums tax paid*** . . . (emphasis added).

The Appellees argue, and the trial court agreed, that the credit allowed against franchise and excise taxes includes the gross premiums tax liability of an insurance company, including any amount offset by investment in Tennessee securities, because to interpret the statutes otherwise would defeat the intent of the legislature to create an enhanced demand for investment in Tennessee securities. We disagree.

The court's decision in this case will rest upon the interpretation of the statutes, T.C.A. §§ 56-4-217, 67-4-808, and 67-4-908(a), as the interpretation relates to the amount due by Appellees to satisfy their tax obligation. Statutes relating to the same subject matter should be construed together. *Westinghouse Elec. Corp. v. King,* 678 S.W.2d 19 (Tenn. 1984), *appeal dismissed,* 105 S.Ct. 1830, 470 U.S. 1075, 85 L.Ed.2d 131. Related statutes must be construed together, and construction of one, if doubtful, may be aided by consideration of language and legislative intent of the other. *State v. Blouvet,* 965 S.W.2d 489 (Tenn. Crim. App. 1997). When interpreting a statute, the role of the Court is to "ascertain and give effect to the legislative intent." *Sharp v. Richardson,* 937 S.W.2d 846, 850 (Tenn.1996). In the absence of ambiguity, legislative intent is derived from the face of a statute, and the Court may not depart from the "natural and ordinary" meaning of the statute's language. *Davis v. Reagan,* 951 S.W.2d 766, 768 (Tenn.1997); *Westland West Community Assoc. v. Knox County,* 948 S.W.2d 281, 283 (Tenn.1997). Applying the above-cited principles of statutory construction, we find that T.C.A. § 56-4-217 limits the amount of credit allowed an

insurance company against its franchise and excise tax to the amount of the premium taxes actually *collected.* "Collect" is defined as "to obtain payment of" as in "collect taxes." American Heritage Dictionary, 4th Ed. (2001). Additionally, to 'collect' is defined as "to be paid for by the receiver." Webster's New International Dictionary, 3rd Ed. (1993). From the natural and ordinary meaning of the word "collect" we find that T.C. A. § 56-4-217 dictates that the amount of premiums tax allowed as a credit against franchise and excise tax under T.C.A. § 56-4-217 is limited to the amount of premiums tax actually obtained in cash by the Commissioner of Commerce and Insurance from an insurance company.

Furthermore, T.C.A. §§ 67-4-808(1) and 67-4-908(a) reiterate the above interpretation in stating that the amount of credit is the *net* amount of gross premiums tax *paid.* "Net" is defined as "remaining after all necessary deductions have been made or adjustments have been made." American Heritage Dictionary, 4th Ed. (2001). From the natural and ordinary meaning of the word "net" we interpret T.C.A. §§ 67-4-808(1) and 67-4-908(a) to allow only that amount of premiums tax actually paid in cash to the Commissioner of Commerce and Insurance by an insurance company, after the reduction for investment in Tennessee securities, to be used as a credit against franchise and excise tax under T.C.A. § 56-4-217.

The intent and purpose of the legislature is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language. *Tuggle v. Allright Parking Sys., Inc.,* 922 S.W.2d 105, 107 (Tenn.1996); *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991). Where the statutory language is plain, clear, and unambiguous, there is no room for interpretation or construction that departs from the words of the statute. *Tuggle,* 922 S.W.2d at 107. The clear, unambiguous language of T.C.A. § 56-4-217 is that "the amount of the premium taxes collected" shall be used as a credit upon the franchise and excise taxes. The clear, unambiguous language T.C.A. §§ 67-4-808(1) and 67-4-908(a) are that "the net amount of gross premiums tax paid " shall be used as a credit upon the franchise and excise taxes. We need search no further than the language of the statute for the intent of the legislature

Consequently, we find that trial court erred when it determined the credit for gross premiums tax paid under the provisions of the Tennessee franchise and excise tax statutes, is the gross premiums tax liability before reduction/credit for the investment in Tennessee securities. We hold that the credit for gross premiums tax paid under the provisions of the Tennessee franchise and excise tax statutes, T.C.A. §§ 67-4-808 and 67-4-908(a), is the net amount of gross premiums tax actually paid and remitted to the Department of Commerce and Insurance, not including any amount of premiums taxes offset for investment in Tennessee securities.

Accordingly, and for the foregoing reasons, the final order of the trial court's grant of summary judgment to the Appellees is vacated, and summary judgment is granted to the Appellant, Commissioner of the Tennessee Department of Revenue. Cost of this appeal are assessed to the Appellees, Tennessee Farmers Assurance Company and Tennessee Farmers Mutual Insurance Company.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.